**MEMORIAL HOSPITAL SYSTEM,**
Plaintiff–Appellant,

v.

**NORTHBROOK LIFE INSURANCE COMPANY, et al.,**
Defendants–Appellees.

No. 89–2513.

United States Court of Appeals,
Fifth Circuit.

June 15, 1990.

Rehearing Denied July 16, 1990.

Mark Douglas Herbert, Sullins, Johnston, Rohrbach & Magers, Houston, Tex., for plaintiff-appellant.

Michael Kuhn, Bracewell & Patterson, Houston, Tex., for Northbrook.

Mike Johanson, Weitinger & Tucker, Houston, Tex., for Noffs.

Before POLITZ, KING and WILLIAMS, Circuit Judges.

KING, Circuit Judge:

Plaintiff-appellant Memorial Hospital System appeals a summary judgment dismissing two claims against defendants-appellees, one claim for breach of contract and the other claim for deceptive and unfair trade practices based on article 21.21 of the Texas Insurance Code. The district court determined that both state law claims were preempted under the Employee Retirement Income Security Act of 1974. We affirm that portion of the district court's judgment dismissing the breach of contract claim, but we vacate that portion of the judgment dismissing the article 21.21 claim and remand the latter claim to the state court.

## I. Background

Defendant-appellee Noffs, Inc. (Noffs) provides health care benefits for its employees and their dependents through a group insurance policy purchased from and administered by defendant-appellee Northbrook Life Insurance Company (Northbrook). Under the terms of the policy, all active, full-time employees of Noffs are eligible for benefits; however, employees hired after February 1, 1986, are not covered during the first thirty days of continuous employment. Upon completion of the thirty-day service requirement, coverage begins on the first day of the following month.

Noffs hired Joseph Echols on September 10, 1986. On September 26, 1986, Joseph's wife, Gloria Echols (Echols), sought treatment at Memorial Hospital. The hospital telephoned Noffs and spoke with an individual named "Sharon" to verify coverage. Sharon verified that coverage was in effect and available for Echols' hospital care. Plaintiff-appellant Memorial Hospital System (Memorial) asserts that it relied on this representation of coverage in rendering its services to Echols until her discharge on November 21, 1986, and that it would not have extended treatment to her without such an assurance of payment. The cost of treatment for Echols totaled $110,829.40.

The Echols assigned their benefits under the Northbrook/Noffs insurance policy to Memorial to cover the cost of hospital treatment. Upon request for payment, Northbrook informed Memorial that Echols was not eligible for benefits on the date of her hospitalization and denied Memorial's claim.[1]

On September 4, 1987, Memorial filed suit against Northbrook and Noffs (collectively, the defendants) in state district court in Harris County, Texas, asserting only state law causes of action: deceptive and unfair trade practices under article 21.21 of the Texas Insurance Code; breach of contract; negligent misrepresentation; and equitable estoppel. Memorial's claims against Northbrook were premised on its theory that Noffs acted as Northbrook's agent in verifying coverage.

Northbrook removed the lawsuit to federal district court based on federal question jurisdiction, alleging the existence of an employee benefit plan regulated under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. Northbrook then filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6), contending that ERISA preempted Memorial's state law claims, and that, under the terms of the ERISA plan in question, Memorial was not entitled to any benefits. Memorial disputed that its claims were preempted. Moreover, it filed a motion to remand, arguing that the group insurance plan in question was not an ERISA plan and that the district court therefore lacked subject matter jurisdiction and should remand the case to the state court.

1. The insurance policy did not cover services rendered by Memorial after November 1, 1986 (the first day of the month following the completion of Joseph Echols' thirty-day service prerequisite to coverage), due to a "pre-existing condition" exclusion contained in the policy.

Mrs. Echols was admitted to Memorial Hospital for treatment prior to the commencement of eligibility; thus, all subsequent hospital treatment related to a condition existing prior to coverage.

The motions for dismissal and for remand were referred to a United States magistrate, who informed the parties that she would treat the motion to dismiss as a motion for summary judgment. The magistrate filed a Memorandum and Recommendation and an Amended Memorandum and Recommendation that were accepted as correct and, by order, adopted by the district court. The district court first determined that the group insurance policy purchased and implemented by Noffs for its employees constituted an ERISA welfare benefit plan. The court then held that removal of this lawsuit was proper under federal question jurisdiction.

The court dismissed Memorial's claims for breach of contract and for violation of article 21.21 of the Texas Insurance Code, determining that these causes of action related to a claim for benefits under an ERISA plan and were consequently preempted. The court also held that article 21.21 is not a statute that "regulates insurance" within the meaning of ERISA's savings clause, 29 U.S.C. § 1144(b)(2)(A), and is therefore not spared from ERISA's preemptive effect.

■ The district court reached a different conclusion, however, regarding the claims that were based on Memorial's independent position as a third-party health care provider, rather than on its derivative status as an assignee of benefits under an ERISA plan. Finding that the claims asserting negligent misrepresentation and estoppel[2] involved state common law principles that "could stand alone absent any issue regarding the application of a welfare benefit plan," the court determined that these claims were not caught in the broad net of ERISA preemption. Having dismissed the two preempted federal claims, the court remanded the pendant state law claims to state court.

Memorial now appeals. In substance, it argues that (1) the district court erred in denying Memorial's motion to remand the entire case because Noffs does not have in place an employee welfare benefit plan regulated by ERISA and, (2) ERISA does not preempt Memorial's "nonderivative" claim against Northbrook and its agents for misrepresentation of coverage under article 21.21 of the Texas Insurance Code. Memorial does not dispute that the unambiguous terms of the Northbrook policy deny coverage to Echols for the hospital treatment in question. Memorial thus concedes on appeal that, if we should determine that Noffs' insurance program constitutes an ERISA plan, the district court correctly dismissed Memorial's breach of contract claim brought in its derivative capacity as an assignee of a plan beneficiary seeking recovery of plan benefits.

## II. Discussion

### A. ERISA's Definition of an Employee Welfare Benefit Plan

Although Memorial's complaint purported to raise only state law causes of action,

---

**2.** The district court may have been confused as to the theory underpinning Memorial's estoppel claim. In its Original Petition filed in state court, Memorial stated under "Count Four: Equitable Estoppel" that "Defendants' conduct further constitutes equitable estoppel to policy coverage of insurance." This appears to be a claim for plan benefits, which, under the court's analysis, *should be preempted as relating to an* ERISA plan. Moreover, Texas courts have held that equitable estoppel is not an independent cause of action, but is rather an affirmative defense to a denial of insurance coverage. *See, e.g., Hermann Hosp. v. National Standard Ins. Co.,* 776 S.W.2d 249, 254 (Tex.App.—Houston [1st Dist.] 1989, writ denied). The district court, however, describing the cause of action as "a textbook example of a contract claim," may have construed Memorial's allegations as asserting the formation of an independent contract between defendants and Memorial based on a promissory estoppel theory.

In any event, this question must remain unresolved. Although Northbrook and Noffs both contend on appeal that the district court erred in its conclusion that ERISA does not preempt Memorial's state law claims based on negligent misrepresentation and estoppel, neither defendant has filed a notice of cross-appeal as a prerequisite to raising this argument. Fed.R. App.P. 4(a). We have held that "the filing of a notice of appeal is a 'mandatory precondition' to our exercise of jurisdiction." *Shipp v. General Motors Corp.,* 750 F.2d 418, 428 (5th Cir.1985). Consequently, Northbrook and Noffs have not preserved for our review the issue of whether the district court's remand of Memorial's pendant state law claims constituted an abuse of discretion.

defendants removed this case to federal court under 28 U.S.C. § 1441(b) based on the alleged existence of an ERISA plan, and the assertion that at least one of Memorial's claims related to a claim for benefits under that plan. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (state law claims falling within scope of § 502(a)(1)(B) of ERISA raise a federal question for purpose of federal court jurisdiction). Memorial maintains that the district court was without subject matter jurisdiction because the "bare purchase" of a group health insurance policy does not establish an employee welfare benefit plan within the contemplation of ERISA. Hence, our threshold question is a jurisdictional one.

ERISA applies to any employee benefit plan if it is established or maintained by an employer or an employee organization engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a). ERISA regulates two distinct types of benefit programs that may be offered to employees, pension plans and welfare plans. We are concerned in this case only with welfare plans. Section 3(1) of ERISA, the definitional section, describes an "employee welfare benefit plan" as

> any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or

otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services....
29 U.S.C. § 1002(1).[3]

Memorial does not dispute that Noffs is an employer engaged in activities affecting commerce. Nor does it contest that the benefits offered under the Northbrook group insurance policy are among the types of benefits referenced in section 3(1) of ERISA. Memorial argues, however, that the insurance policy provided by defendants cannot itself be an ERISA plan, and that there is no indication in the record of a "plan, fund or program" independent of the bare purchase of group health insurance. We disagree.

By its express terms, ERISA encompasses welfare plans provided through the purchase of insurance. 29 U.S.C. § 1002(1). Moreover, it is a common practice for employers to provide health care benefits to their employees through the purchase of a group health insurance policy from a commercial insurance company. *See Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 727, 105 S.Ct. 2380, 2382, 85 L.Ed.2d 728 (1985).

The Eleventh Circuit, sitting en banc, has held that an ERISA plan is established "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits."[4] *Donovan*

---

**3.** Additional pertinent definitions are provided in this section:

> (5) The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.
> (6) The term "employee" means any individual employed by an employer.
> (7) The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from

> an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
> (8) The term "beneficiary" means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.
> 29 U.S.C. § 1002(5)–(8).

**4.** *Donovan*'s test for determining whether an employer has established an ERISA plan has been followed by other circuits. *See, e.g., Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546, 551 (6th Cir.1989); *Ed Miniat, Inc. v. Globe Life*

*v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982) (en banc). A formal document designated as "the Plan" is not required to establish that an ERISA plan exists; otherwise, employers could avoid federal regulation merely by failing to memorialize their employee benefit programs in a separate document so designated.[5]

 Looking, then, to the summary judgment evidence, defendants submitted a Certificate of Insurance issued by Northbrook and an accompanying affidavit of Karen Churchwell, Noff's office manager, in response to Memorial's motion to remand. The group policy was issued for the stated purpose of insuring the employees of Noffs, and sets out in considerable detail the intended benefits—including life, accidental death and dismemberment, accident, prescription drug, and comprehensive medical insurance benefits—and the terms and conditions relating to eligibility and coverage, including the procedure for filing a proof of claim. Noffs established and

maintained the plan by purchasing the policy and paying the premiums directly to Northbrook. Noffs' employees contributed, through payroll deductions, one-half of the monthly premium payments made to Northbrook; Noffs paid the other half. While the bare purchase of an insurance policy may not exclusively establish the existence of an ERISA plan, *see Taggart Corp. v. Life & Health Benefits Admin.,* 617 F.2d 1208, 1211 (5th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981); *Donovan,* 688 F.2d at 1373, 1375, the evidence here clearly shows Noffs' intent to provide its employees with a welfare benefit program through the purchase and maintenance of a group insurance policy.[6]

Memorial's reliance on *Taggart* for the proposition that a "bare bones" insurance policy does not amount to an ERISA plan is misplaced. *Taggart* involved a claim by a corporation and its only employee that a multiple employer trust (MET) constituted

*Ins. Group Co.,* 805 F.2d 732, 739 (7th Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987); *Harris v. Arkansas Book Co.,* 794 F.2d 358, 360 (8th Cir.1986); *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1503–04 (9th Cir.1985); *see also Landry v. Air Line Pilots Assoc. Int'l,* 901 F.2d 404, 415 (5th Cir.1990) (citing *Donovan* with approval, but finding the test inapplicable to the issue of *when* a plan is established, rather than *if* a plan is established); *Rollo v. Maxicare of Louisiana, Inc.,* 695 F.Supp. 245, 247 (E.D.La.1988).

5. ERISA's regulations regarding the responsibilities of plan fiduciaries do provide that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). However, this fiduciary responsibility only arises once it has been determined that ERISA covers an employer's plan, and is not itself a prerequisite to coverage. *Donovan,* 688 F.2d at 1372.

6. It should be noted that Noffs did not function merely as an advertiser of a group insurance program. Pursuant to authority granted in section 505 of ERISA, the Secretary of Labor has issued regulations excluding certain group or group-type insurance programs from the scope of ERISA. 29 U.S.C. § 1135; 29 C.F.R. § 2510.3–1(j) (1987). *See Robertson v. Alexander Grant & Co.,* 798 F.2d 868, 870 (5th Cir. 1986) ("The regulations prescribed by the Secretary are 'entitled to considerable deference, and we will uphold any interpretation that is reason-

ably defensible.' "), *cert. denied,* 479 U.S. 1089, 107 S.Ct. 1296, 94 L.Ed.2d 152 (1987). The pertinent regulation explains that the term "employee welfare benefit plan" does not include a group insurance program offered by an insurer to employees under which:

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; *and*

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j) (1987) (emphasis added). The "and" connector indicates that the existence of any one of the four criteria listed in the regulation would prevent a group insurance plan, otherwise qualifying as an ERISA plan, from being excluded from coverage under the Act. *See Kanne v. Connecticut Gen. Life Ins. Co.,* 867 F.2d 489, 492 (9th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989).

an ERISA plan. The MET in *Taggart* was a profit-making enterprise that provided group insurance to employers too small to qualify for group rates on their own. The Taggart Corporation did not participate in the formation of the MET, and had no involvement in its day-to-day operations. The corporation, through its president and sole employee, Stanley Kansas (Kansas), subscribed to the MET in order to obtain health care for Kansas and his family at reduced premiums. Asserting that the MET itself was an employee welfare benefit plan, the corporation and Kansas brought suit under ERISA against the insurance carrier to recover health insurance benefits allegedly owing to Kansas's wife.

The district court concluded that the facts did not establish the existence of an ERISA welfare plan and dismissed the case for lack of subject matter jurisdiction. *Taggert Corp. v. Efros*, 475 F.Supp. 124, 127 (S.D.Tex.1979). The court found that the "circumstances surrounding the submission of the subscription agreement by Stanley M. Kansas ... simply involve[d] the purchase of insurance by plaintiff, Stanley M. Kansas, for himself and his family." [7]

We affirmed, holding that "neither SMET [the MET] nor Taggart's subscription to SMET constitutes a 'plan, fund, or program,' within the meaning of 29 U.S.C.A. § 1002(1)." *Taggart*, 617 F.2d at 1211. We stated in our discussion that, "[c]onsidering the history, structure and purposes of ERISA, we cannot believe that that Act regulates bare purchases of health insurance where, as here, the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits.... The corporation did no more than make payments to a purveyor of insurance, patently for tax reasons." *Id.*

Although we held in *Taggart* that the purchase of an insurance policy does not, in and of itself, establish the existence of an ERISA plan, we certainly did not hold, contrary to Memorial's argument, that an employer's purchase of health insurance offers no evidence of an intent to provide such a plan. We agree with the reasoning of the Eleventh Circuit that

> the purchase of insurance does not conclusively establish a plan, fund, or program, but the purchase is evidence of the establishment of a plan, fund, or program; the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established.

*Donovan*, 688 F.2d at 1373.

■ There is apparently a MET involved in this case; Northbrook's certificate of insurance lists the policyholder as "Trustee of the Northbrook Multiple Employer Trust." Neither side, however, has enlightened us as to the MET's purpose, organization, functions, or connection to Noffs. In any event, we do not read *Taggart* so broadly as to exempt all employee welfare benefit plans from ERISA regulation simply because a MET is connected in some manner with the plan. *See Donovan*, 688 F.2d at 1374–75; *Perkins v. Time Ins. Co.*, 701 F.Supp. 576, 577–78 (S.D.Miss. 1988); *Davis v. Time Ins. Co.*, 698 F.Supp. 1317, 1320–21 (S.D.Miss.1988).

■ Unlike *Taggart*, the present case does not involve the bare purchase of insurance by a lone employee through a MET. Noffs, a statutory employer, has chosen to provide welfare benefits to all of its full-time employees through the purchase of a group insurance policy. Noffs is solely responsible under the policy for submitting monthly premiums directly to Northbrook

---

7. *Cf.* 29 C.F.R. § 2510.3–3(b), –3(c)(1) (1987):
 (b) Plans without employees. For purposes of Title I of the Act and this chapter, the term "employee benefit plan" shall not include any plan, fund or program ... under which no employees are participants covered under the plan....
 (c) Employees. For purposes of the section:

(1) An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse....

by the premium due dates. The fact that Noffs' administrative functions under the policy are minimal is perfectly in keeping with its intent that Northbrook administer the plan as well as insure it.[8] There is, thus, an employer-employee-plan relationship that was lacking in *Taggart*. *See Perkins*, 701 F.Supp. at 578 (employer-employee relationship distinguishable from *Taggart's* employee-MET, or even employer-MET, relationship). In addition, from the summary judgment evidence a reasonable person could ascertain the intended benefits under Noffs' plan, a class of plan beneficiaries, the source of financing for the plan, and procedures for receiving benefits. *Donovan*, 688 F.2d at 1373. The district court therefore correctly concluded that the plan in question is an ERISA welfare benefit plan.[9]

## B. *Preemption of Memorial's State Law Claim*

Having concluded that this case was properly removed to federal court, we turn to the sole remaining issue on appeal: whether Memorial's state law claim based on article 21.21 of the Texas Insurance Code, Tex.Ins.Code Ann. art. 21.21 § 16 (Vernon 1981), is preempted by ERISA.[10] In ruling on defendants' motion for summary judgment, the district court distinguished between those claims brought in Memorial's derivative capacity as an assignee of plan benefits and those brought in its independent status as a third-party health care provider. Finding that Memorial's causes of action based on breach of contract and article 21.21 related to a claim for ERISA plan benefits, the court granted summary judgment dismissing these claims. The court remanded to state court Memorial's remaining non-derivative claims.

Memorial initially challenges the district court's finding that its claim for unfair and deceptive trade practices under article 21.-21 of the Texas Insurance Code is a derivative claim for plan benefits. Memorial then asserts that this claim is not preempted by ERISA because it does not "relate to" an ERISA plan within Congress's contemplation of that term. It also contends that the claim is based on state law that regulates insurance, and is thus saved from preemption under the Act's "saving clause." [11]

---

**8.** Memorial's own complaint is inconsistent with an assertion that Noffs "neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits." It states that the Northbrook insurance "policy was administered and maintained through Defendant, Noffs, Inc., from the premiums paid by said Defendant as a benefit for its employees and their dependents." The complaint also recites that "Defendant Noffs, Inc., conducts acts involving the handling of insurance matters on behalf of Defendant, Northbrook, which are consistent with Art. 21.02 of the Texas Insurance Code and as such, Defendant, Noffs, Inc., shall be deemed an 'agent' of Defendant, Northbrook."

**9.** Memorial also vigorously contends that the absence of a trust fund from which benefits would be paid precludes the application of ERISA to Noffs' plan. Memorial has simply misapprehended Congress's definition of an ERISA welfare plan. It is true that one of the principal goals of ERISA is the protection of plan assets held in trust for the benefit of plan participants and beneficiaries. *See, e.g.,* 29 U.S.C. § 1001 (Congressional findings and declaration of policy). However, ERISA specifically envisions that an employer may establish an employee welfare benefit plan "through the purchase of insurance or otherwise." 29 U.S.C. § 1002(1). *See Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985) ("[ERISA] [p]lans may self-insure or they may purchase insurance for their participants."). Although section 403(a) of the Act imposes a fiduciary requirement that "all assets of an employee benefit plan shall be held in trust by one or more trustees," 29 U.S.C. § 1103(a), this provision does not apply "to any assets of a plan which consist of insurance contracts or policies issued by an insurance company qualified to do business in a State." 29 U.S.C. § 1103(b)(1).

**10.** The district court made no findings on the merits of any of Memorial's theories of recovery, and we will likewise refrain from offering an opinion as to the legal viability of its unpreempted causes of action under Texas law. Although Northbrook argues on appeal that Noffs is not its authorized agent, and thus it cannot be held liable for Noffs' misrepresentations, we again note that Northbrook has not filed a notice of appeal to raise this issue. This is a matter that is in any event better left to the Texas courts to determine on remand.

**11.** The saving clause provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State

Concluding that Memorial's article 21.21 cause of action is not preempted under the general preemption provision of section 514(a), we need not reach the second issue of whether an otherwise preempted claim may be saved under section 514(b)(2)(A).

■ We review a grant of summary judgment by evaluating the record under the same guidelines as were used by the district court. Making all factual inferences in favor of the nonmovant, we ask whether the movant is entitled to judgment as a matter of law. *Degan v. Ford Motor Co.*, 869 F.2d 889, 892 (5th Cir.1989).

We note first that, in its original complaint, Memorial does not specifically refer to the Echols' assignment of benefits in its article 21.21 count, as it does in its second count for breach of contract. Memorial does not claim a right to policy benefits, nor does it allege bad faith processing of its claim. The gravamen of this cause of action appears to be negligent misrepresentation, albeit a Texas codification of that common law doctrine. *See Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 693 (Tex.1979) (misrepresentations by agent as to coverage and benefits give rise to a cause of action under article 21.21). Memorial is claiming as its damages its actual losses for services rendered, as well as a statutory penalty.

Construing Memorial's original complaint in a light most favorable to its position, we agree that the district court mischaracterized its article 21.21 claim as a derivative claim for benefits. We may nonetheless affirm the district court's summary judgment if we determine an independent basis for doing so. Thus, we are necessarily compelled to enter the preemption thicket.

Section 514(a) provides in pertinent part that ERISA preempts "any and all State laws insofar as they now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The statute contains certain limited exceptions to this broad preemption provision; however, none of these is relevant for present purposes.

Although the Supreme Court has offered considerable guidance as to the scope of preemption under the Act, the issue of whether a particular state law, applied in a particular factual situation, "relates to" an ERISA plan continues to plague lower courts. The Court has interpreted ERISA's general preemption provision liberally: "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). A purely semantic approach cannot be taken to its logical extreme, however. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n. 21, 103 S.Ct. at 2901 n. 21. For example, the Court has held that Georgia's general garnishment law is not preempted under section 514(a), even though garnishment mechanisms can subject a plan to "substantial administrative burdens and costs" and can "prevent plan participants from receiving their benefits." *Mackey v. Lanier Collections Agency & Service, Inc.*, 486 U.S. 825, 831–32, 108 S.Ct. 2182, 2186, 100 L.Ed.2d 836 (1988).

Thus, the preemption clause of ERISA must be read in context with the Act as a whole, and with Congress's goal in creating an exclusive federal enclave for the regulation of benefit plans. The Court has also cautioned that "ERISA preemption analysis 'must be guided by respect for the separate spheres of governmental authority preserved in our federalist system.'" *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 19, 107 S.Ct. 2211, 2221, 96 L.Ed.2d 1 (1987) (state severance pay statute not preempted by ERISA). In *Fort Halifax,*

---

which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The saving clause is itself qualified by the "deemer clause," which states that neither an ERISA plan nor a trust created by such a plan "shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." *Id.* at § 1144(b)(2)(B).

the Court analyzed not only the language of section 514(a), but also the purposes of the preemption provision and the regulatory focus of the Act as a whole. It ultimately concluded that Congress could not have intended to disable a Maine severance pay statute "from attempting to address uniquely local social and economic problems." *Id.*

It is clear that ERISA preempts a state law cause of action brought by an ERISA plan participant or beneficiary alleging improper processing of a claim for plan benefits. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987); *Ramirez v. Inter–Continental Hotels,* 890 F.2d 760, 762 (5th Cir.1989). We have also held in this circuit that ERISA preempts state law claims, based on breach of contract, fraud, or negligent misrepresentation, that have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been misled. *See Lee v. E.I. DuPont de Nemours & Co.,* 894 F.2d 755, 758 (5th Cir.1990); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1295 (5th Cir.1989). Although finer discernments might be made, these and similar cases binding in this circuit,[12] which have found preemption of a plaintiff's state law causes of action, have at least two unifying characteristics: (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan;[13] and (2) the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.[14] For the reasons we will discuss below, we conclude that these two factors are not sufficiently implicated in the present case to warrant a finding that Memorial's state law claim is preempted.

1. *Congressional intent.* The "ultimate touchstone" in a preemption analysis is Congress's purpose in enacting the federal statute. *Fort Halifax,* 482 U.S. at 8, 107 S.Ct. at 2215. Congress enacted ERISA " 'to promote the interests of employees and their beneficiaries in employee benefit plans,' ... and 'to protect contractually defined benefits.' " *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, ——, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989) (citations omitted).[15] ERISA's comprehensive preemption of state law affords employers the advantages of a uniform set of regulations governing plan fiduciary responsibilities and governing procedures for processing claims and paying benefits.

---

**12.** *See, e.g., Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (state common law action brought by a beneficiary to recover plan benefits that were allegedly improperly withheld); *Boren v. N.L. Indus., Inc.,* 889 F.2d 1463 (5th Cir.1989) (employee relied on state law to advance complaint that his benefits under ERISA plan were terminated); *Degan v. Ford Motor Co.,* 869 F.2d 889 (5th Cir.1989) (action by beneficiary to recover pension benefits, predicated on oral modifications to the pension plan); *Hermann Hosp. v. MEBA Medical & Benefits Plan,* 845 F.2d 1286 (5th Cir.1988) (derivative action brought by assignee who stood in shoes of plan beneficiary to recover benefits owed under an ERISA plan).

**13.** *Compare Pilot Life,* 481 U.S. at 52, 107 S.Ct. at 1553 (state cause of action for improper processing of claim for ERISA benefits conflicts with civil enforcement scheme for ERISA-plan participants and beneficiaries under § 502(a)) *with Hartle v. Packard Elec.,* 877 F.2d 354, 356 (5th Cir.1989) (claims "only peripherally connected to the concerns addressed by ERISA" are not preempted).

**14.** *See Mackey,* 486 U.S. at 833, 108 S.Ct. at 2187; *Perkins v. Time Ins. Co.,* 898 F.2d 470, 473 (5th Cir.1990) ("A state law claim ... which does not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) as such, is not preempted by ERISA.").

**15.** *See generally* 29 U.S.C. § 1001 (Congressional findings and declaration of policy):

It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

*Id.* at (b).

*Fort Halifax,* 482 U.S. at 9–11, 107 S.Ct. at 2216–17.

Before determining if ERISA's regulatory or preemptive scheme is implicated by the effects of this cause of action, it is first necessary to examine the commercial realities of Memorial's position as a health care provider, as well as the contours of its claim under article 21.21. The scenario depicted in Memorial's appeal is one that is reenacted each day across the country. A patient in need of medical care requests admission to a hospital (or seeks treatment from a doctor). The costs of medical care are high and many providers have only limited budget allocations for indigent care and for losses from patient nonpayment. Naturally, the provider wants to know if payment reasonably can be expected. Thus, one of the first steps in accepting a patient for treatment is to determine a financial source for the cost of care to be provided.

If a provider believes that a patient may be covered under a health care plan, it is a customary practice to communicate with the plan agents to verify eligibility and coverage. If the provider confirms that a patient has health insurance that covers a substantial part of the expected costs of the health care, it will normally agree to admit the patient without further ado. Memorial contends that when an insurance company or its agent, including one acting as an ERISA plan fiduciary, verifies coverage to a third-party provider, the insurer should recognize the commercial implications to the provider of its assurances. Under Memorial's theory, the insurance company is agreeing to pay expenses within the represented terms of the policy or to accept the consequences for a false representation of coverage that the provider reasonably relied upon.

If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan. If the patient is not covered under the plan, he or she is individually obligated to pay for the medical services received. The only question is whether the risk of non-payment should remain with the provider or be shifted to the insurance company, which through its agents misrepresented to the provider the patient's coverage under the plan. A provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage.

Enforcing the allocation of risks between commercial entities that conduct business in a state is a classically important state interest. Article 21.21 of the Texas Insurance Code provides a right of action and allows treble damages and attorneys' fees to "any person who has been injured" by certain enumerated "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance." Tex.Ins.Code Ann. art. 21.21 § 16(a) (Vernon 1981). A cause of action under article 21.21 against an insurance carrier for false representation of coverage by its agents to a hospital is recognized by Texas courts. *See Hermann Hosp. v. National Standard Ins. Co.,* 776 S.W.2d 249 (Tex.App.—Houston [1st Dist.] 1989, no writ). Describing the relationship between an insurance company and a provider in this situation, the court in *Hermann Hospital* explained:

> The [Texas] supreme court has held that misrepresentations as to coverage and benefits are precisely the sort of conduct that give rise to a cause of action under this section. We find that as a practical matter, the relationship between insurance companies and providers of health care is a direct one, with the health care provider acting in reliance on the representations of coverage made by the carriers. Hospitals and other health care providers must, and do, rely upon the insurance carriers' representations of coverage in making their decisions regarding admission of potential patients. If insurance coverage and benefits can be verified, the hospital will usually accept an assignment of benefits to insure it is paid for any services rendered. If insurance

coverage and benefits cannot be verified, or if no coverage exists, the medical provider can then make alternative financial arrangements. To insulate the insurance carriers from liability leaves the medical care provider without recourse against the party causing its damage, if it acts in reliance on the representation of coverage. Had the insurance carrier not falsely or negligently provided information, appellant could have sought alternative means to ensure that it received payment for services before rendering them.

*Id.* at 252.

Defendants in this case have not convinced us that either the commercial scenario described above, or its state law vindication, raises any issue concerning the matters that Congress intended to be regulated exclusively by ERISA. Moreover, they have not adequately explained how insulating plan fiduciaries from the consequences of their commercial dealings with third-party providers would further any of ERISA's goals.

██ Defendants first argue that Northbrook and Noffs are fiduciaries and that their actions are therefore subject to the fiduciary duties of the Act. However, obligations of ERISA fiduciaries run only toward the plan, for the benefit of participants and beneficiaries. *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985) (fiduciary relationship of section 409 is one " 'with respect to a plan' "). The Act imposes no fiduciary responsibilities in favor of third-party health care providers regarding the accurate disclosure of information, or, indeed, regarding any other matter.

Defendants also contend that Memorial's claim relates to an ERISA plan because Memorial's damages, if it should prevail, would be measured in part by the amount of benefits it would have received had there been no misrepresentation regarding coverage. This argument presents a closer question on the preemption issue. Nevertheless, we find that this incidental relation to an ERISA plan is insufficient on these facts to require a finding of preemption.

The benefits issue arises only to set a benchmark on payments Memorial could have reluctantly relied upon, and to prevent a court from speculating on the proper amount of damages; it is unrelated to the Echols' actual right to benefits under the plan. In addition, a one-time recovery from Northbrook or its putative agent, Noffs, would not affect the on-going administration or obligations of an ERISA plan, as would be the case, for example, in an action brought by a pension plan beneficiary for an increase in retirement benefits. *See Pizlo v. Bethlehem Steel Corp.,* 884 F.2d 116, 120–21 (4th Cir.1989) (citing cases); *cf. Fort Halifax,* 482 U.S. at 12, 107 S.Ct. at 2219 (lump-sum payment to plaintiffs is a single event requiring no further administrative responsibility).

We are also unpersuaded that preemption in this case would further the congressional goal of protecting the interests of employees and their beneficiaries in employee benefit plans. As we noted in *Hermann Hosp. v. MEBA Medical & Benefits Plan,* 845 F.2d 1286, 1289 n.13 (5th Cir. 1988), discouraging health care providers from becoming assignees would "undermine Congress' goal of enhancing employees' health and welfare benefit coverage." The Ninth Circuit has explained that "[s]uch assignments ... protect beneficiaries by making it unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan." *Misic v. Building Service Employees Health & Welfare Trust,* 789 F.2d 1374, 1377 (9th Cir.1986). If providers have no recourse under either ERISA or state law in situations such as the one *sub judice* (where there is no coverage under the express terms of the plan, but a provider has relied on assurances that there is such coverage), providers will be understandably reluctant to accept the risk of non-payment, and may require up-front payment by beneficiaries—or impose other inconveniences— before treatment will be offered. This does not serve, but rather directly defeats,

the purpose of Congress in enacting ERISA.

We have held under different circumstances that ERISA preemption may occur even though ERISA itself could not offer an aggrieved employee a remedy for alleged misrepresentations.[16] That principle should not be extended, however, to encompass third-party providers, particularly when to do so would run counter to one of Congress's overriding purposes in enacting ERISA.

2. *Relations between principal ERISA entities.* The Supreme Court has recognized two types of civil actions that may be brought against ERISA plans. *Mackey,* 486 U.S. at 832–33, 108 ·S.Ct. at 2186–87. The first involves enforcement actions under section 502 brought by specified ERISA entities to secure certain specified relief. *See* 29 U.S.C. § 1132. Cases included in the second category, "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan," all involve claims brought by non-ERISA entities. *Id.* at 833 & n. 8, 108 S.Ct. at 2187 & n. 8. "[A]lthough obviously affecting and involving ERISA plans and their trustees," this second type of lawsuit is not preempted. *Id.*

The case cited by the Supreme Court for the proposition that certain tort actions brought by non-ERISA entities against ERISA plans are not preempted is *Abofre-*

*ka v. Alston Tobacco Co.,* 288 S.C. 122, 341 S.E.2d 622 (1986), which involved an action for libel brought by a doctor against an employer and its employee benefit plan. Dr. Abofreka (Abofreka) provided medical care to the employees covered under the group plan. Abofreka submitted two claims to the plan on behalf of employees he had treated. Believing that these claims had been altered to bring the request for payment within the terms of the insurance policy, the plan circulated a memorandum requesting that employees refrain from seeking medical treatment from Abofreka because his services were "not within the usual and customary realm of treatment and charges." 341 S.E.2d at 624. Within a short period thereafter, Abofreka's patient load represented by the employer's group health plan was reduced by approximately eighty percent. A jury found that the actions of the employer and the plan injured Abofreka's reputation, and awarded him actual and punitive damages.[17]

Although it could certainly be argued that Abofreka's defamation action did "relate to" a plan, since the facts underlying the claim were connected to the activities of plan fiduciaries who were administering the plan and processing Abofreka's claims for benefits, a majority of the Supreme Court believes that ERISA's general preemption clause does not encompass state law claims such as the one raised by a health care provider in *Abofreka.*[18] Moreover, if an ERISA plan may be sued by

---

16. *See Lee,* 894 F.2d at 757 (citing *Cefalu,* 871 F.2d at 1292–97, and *Degan,* 869 F.2d at 893–95). These three cases all involved oral misrepresentations allegedly made by employers to employees regarding the benefits to which the employees were entitled under the terms of their pension plans. *See also Lister v. Stark,* 890 F.2d 941, 946 (7th Cir.1989) ("[T]he availability of a federal remedy is not a prerequisite for federal preemption"). Other courts have reasoned that a lack of available remedies is an important consideration in determining if Congress intended a particular state law to be preempted in a particular factual situation. *See Perry v. P*I*E Nationwide, Inc.,* 872 F.2d 157, 162 (6th Cir.1989) (preemption should apply to a state law claim only if Congress has provided a remedy for the wrong asserted), *cert. denied,* — U.S. ——, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990); *HCA Health Serv. of the Midwest, Inc. v. Catram-*

*bone,* 682 F.Supp. 381, 383 (N.D.Ill.1988) ("[P]laintiff's claim in count V is that, as a third-party provider, it provided services in reliance upon assurances from defendant that there was coverage when in fact there was none. Its claim is based upon a recognition that it has no ERISA rights it can pursue, and that claim is not preempted.").

17. The South Carolina Supreme Court discussed issues relating only to the state libel action; the question of ERISA preemption was not before that court.

18. The Supreme Court's analysis in *Mackey* is rooted in large part on section 502(d)(1), which provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity." 29 U.S.C. § 1132(d)(1).

non-ERISA entities for "run-of-the-mill" torts committed by the plan—and plan assets attached to satisfy a resulting judgment—then, surely, a similar state law claim against a plan fiduciary creates no greater preemptive concerns.

In *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1467–68 (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987), we determined that the most important factor for a court to consider in deciding whether a state law affects an employee benefit plan "in too tenuous, remote, or peripheral a manner to be preempted" is whether the state law affects relations among ERISA's named entities. "[C]ourts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan.[19] *Id.* at 1467. We recently reaffirmed this principle in *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir.1990), in which we held that ERISA did not preempt a state law claim based on fraudulent solicitation. "[A] claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage, 'relates to' that plan only indirectly." *Id.*

In describing ERISA's civil enforcement scheme, the Supreme Court has explained that section 502(a)

represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

*Pilot Life*, 481 U.S. at 54, 107 S.Ct. at 1556. In a somewhat similar vein, one court has depicted the "bargain" that Congress struck in ERISA as follows:

Plaintiffs and employees similarly situated receive the many protections of ERISA in exchange for certain rights to sue under previous federal and state law. Congress has decided that they are better off for the bargain. Whatever injustices this scheme may tolerate in isolated instances are more than compensated by the general security provided to pension rights under ERISA—plaintiffs themselves are now enjoying the fruits of rights which Caterpillar could not and cannot divest. If workers deserve further protection, it will be up to Congress to provide it.

*Williams v. Caterpillar, Inc.*, 720 F.Supp. 148, 152 (N.D.Cal.1989).

Simply put, Memorial Hospital and the countless other health care providers in this country were not a party to this bargain. At least in this circuit, a health care provider does not even have independent standing to seek redress under ERISA. *See Hermann Hospital*, 845 F.2d at 1290.[20]

---

**19.** We held in *Sommers* that ERISA did not preempt a state common law action based on breach of corporate fiduciary duty, as applied to the facts of that case. 793 F.2d at 1470.

**20.** Contrary to defendants' assertions, our prior holding in *Hermann Hospital* does not control the result in this case. The plaintiff in *Hermann Hospital* was also a hospital assignee; however, the facts in that case indicate that the hospital was aggrieved over a plan's delay in processing its claim and was seeking recovery of plan benefits allegedly owed to its assignor. *See Hermann Hospital*, 845 F.2d at 1287. The bulk of the court's careful analysis was devoted to the

issue of standing. We held that a hospital has no independent standing as a "non-enumerated party" to bring an action under section 502(a) of ERISA, *id.* at 1289, but can enjoy derivative standing as an assignee of plan benefits. *Id.* In a brief treatment of the issue, the court found the hospital's state law claims preempted, but it is clear from the court's analysis that it considered these claims to be dependent on, and derived from, the rights of the plan beneficiaries to recover benefits under the terms of the plan. *Id.* at 1290. In any case, *Hermann Hospital* was decided before the Supreme Court issued its opinion in *Mackey*. See discussion *supra*, part II.B.2. We believe that *Mackey*

We cannot believe that Congress intended the preemptive scope of ERISA to shield welfare plan fiduciaries from the consequences of their acts toward non-ERISA health care providers when a cause of action based on such conduct would not relate to the terms or conditions of a welfare plan, nor affect—or affect only tangentially—the ongoing administration of the plan. As the Second Circuit stated in *Rebaldo v. Cuomo,* 749 F.2d 133 (2d Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985):

> This conclusion [that the preemptive scope of ERISA is neither all-encompassing nor unlimited] follows as a matter of common sense from the fact that ERISA plan members and managers are bound to engage in myriad transactions that Congress never considered when it drafted § 514. A preemption provision designed to prevent state interference with federal control of ERISA plans does not require the creation of a fully insulated legal world that excludes these plans from regulation of any purely local transaction.

*Id.* at 138 (holding that ERISA did not preempt state statute setting rates that hospitals must charge private payors).

As the district court correctly concluded below, Memorial's state law claims asserted as an assignee of Echols' benefits under Noffs' plan are preempted. As assignee, Memorial stands in the shoes of Echols and may pursue only whatever rights Echols enjoyed under the terms of the plan. Such derivative claims invoke the relationship among the standard ERISA entities and clearly relate to a plan for preemption purposes. *See Hermann Hospital,* 845 F.2d at 1290. Moreover, these derivative claims fall within the scope of section 502(a), ERISA's civil enforcement scheme, which Congress intended to be the exclusive vehicle for suits by a beneficiary to recover benefits from a covered plan. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62–63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).

places a different light on state law actions brought by non-ERISA entities against an

Memorial's article 21.21 claim, however, stands on different ground. It has brought this state law action in its independent status as a hospital, and Echols' assignment of benefits is irrelevant to Memorial's right to recover. It is undisputed that Noffs' plan did not cover Echols for Memorial's services, and Memorial neither seeks benefits from the plan nor claims that the plan acted improperly in processing and denying Memorial's claim. The claim is thus independent of the plan's actual obligations under the terms of the insurance policy and in no way seeks to modify those obligations. *See Albert Einstein Medical Center v. Action Mfg. Co.,* 697 F.Supp. 883, 884 (E.D. Pa.1988). Rather, Memorial seeks damages from an insurance company and its alleged agent, claiming that, had it not been for negligent misrepresentations of coverage, Memorial would not have accepted the financial risk of providing medical treatment to Echols. We do not think that Congress intended ERISA to regulate the commercial interactions of such entities in such situations.

### III. Conclusion

Although the scope of ERISA's preemptive force is broad, we find that its boundaries have been reached and exceeded under the facts of this case. Based on the foregoing reasons, we AFFIRM that portion of the judgment of the district court dismissing Memorial's claim based on breach of contract, VACATE that portion of the judgment dismissing Memorial's article 21.21 claim, and REMAND with instructions to remand the article 21.21 claim to state court. Each party shall bear its own costs.

ERISA plan or fiduciary.