**Ernest D. HOBBS, II, Plaintiff,**

v.

**The STROH BREWERY COMPANY, Defendant.**

Civil Action No. 3:99–CV–715–WS.

United States District Court, S.D. Mississippi, Jackson Division.

Aug. 8, 2000.

Davey L. Tucker, Tracey Leigh Tucker, Jackson, MS, for plaintiff.

Jeffrey A. Walker, Vangela M. Wade, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, David H. Oermann, Butzel Long, Bloomfield Hills, MI, for defendant.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND

WINGATE, District Judge.

Before the court is plaintiff Ernest D. Hobbs', II, ("Hobbs") motion to remand this action to the Circuit Court of the First Judicial District of Hinds County, Mississippi. Plaintiff's motion comes in response to defendant Stroh Brewery Company's ("Stroh") notice of removal dated October 13, 1999. After having reviewed the briefs and memoranda provided by both parties, this court finds that the plaintiff's motion is not well taken and denies it for the reasons which follow.

## I. BACKGROUND

Plaintiff Hobbs, a former employee of The Stroh Brewery Company, now known as SBC Holdings, Inc., commenced in state court this civil action on September 1, 1999. Hobbs claims he was due, but not paid, severance "benefits" under the company's Severance Policy. Hobbs asserts causes of action for breach of contract and fiduciary duty, bad faith, fraud, and gross negligence. He seeks, in addition to contract damages, damages for emotional distress and punitive damages.

On October 13, 1999, Stroh filed a notice of removal in compliance with Title 28 U.S.C. §§ 1441(a)[1] and 1446(b).[2] Stroh based its notice of removal to federal court on its assertion that this case provides federal question jurisdiction under Title 28 U.S.C. § 1331[3] and diversity jurisdiction under Title 28 U.S.C. § 1332.[4]

---

1. Title 28 U.S.C. § 1441(a) provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

2. Title 28 U.S.C. § 1446(b) states that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based ...."

3. Title 28 U.S.C. § 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

4. Title 28 U.S.C. § 1332(a) provides in pertinent part that, "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States; ...."

In regards to its assertion that the litigation evokes federal question jurisdiction, Stroh argues in its notice of removal that the Stroh's Severance Policy is "an employee welfare benefit plan" within the meaning and scope of the Employee Retirement Income Security Act of 1974, as amended, Title 29 U.S.C. § 1001 et seq. ("ERISA"). Therefore, argues Stroh, this court has subject matter jurisdiction over this dispute by virtue of § 1331, and, more, the state law claims made by Hobbs are preempted by ERISA and are displaced by the civil enforcement scheme of that law.

In regards to its claim that diversity jurisdiction exists, Stroh notes for the court the different state citizenships between the plaintiff and the defendant. Stroh is a corporation with dual citizenship, organized under the laws of the state of Arizona corporation with its principal place of business in Detroit, Michigan. Hobbs is a resident of Hinds County, Mississippi. Stroh also argues that while the stated amount of contractual damages in Hobbs' complaint is $63,385, the same complaint further alleges unstated damages for physical/emotional distress and punitive damages. (Pl.'s Mot. to Remand, ¶ 2 and Compl. ¶ 10.) Stroh alleges that this court should consider these speculative damages in determining the appropriate amount in question for federal diversity jurisdiction purposes.

In response to Stroh's notice of removal, Hobbs brings the motion that is before the court. In it, Hobbs attacks Stroh's argument defining the Severance Policy as an ERISA employee welfare benefit plan; instead, Hobbs characterizes the severance policy as a "one-time severance obligation without ongoing administration of benefits that is required of an ERISA plan." (Pl.'s Mem. in Supp. of Mot. to Remand ¶ 5.) Thus, concludes Hobbs, the severance policy does not earn ERISA-style preemption that would give this court federal question jurisdiction under § 1331.

Hobbs also challenges Stroh's diversity jurisdiction claim, claiming that there is "no diversity of citizenship" and that the "amount in controversy does not exceed the amount of $75,000," exclusive of costs and interest. (Pl.'s Mem. in Supp. of Mot. to Remand ¶ 8.)

## II. ANALYSIS

### I. The Stroh Severance Policy is an ERISA Employee Welfare Benefits Plan as Defined in Title 29 U.S.C. § 1002(1).

In order to evaluate Stroh's claims that its "Severance Pay Plan" is an employee welfare benefit plan under ERISA and would thus evoke federal question jurisdiction, the court needs to analyze the Severance Policy under existing ERISA case law. ERISA defines a covered "employee welfare benefit plan" as one that provides "(A) . . . benefits in the event of sickness, accident, disability, death or unemployment . . . or (B) any benefit described in [section 302(c) of the Labor–Management Relations Act]." Title 29 U.S.C. § 1002(1). Benefits under section 302(c) of the Labor–Management Relations Act include " . . . pooled vacation, holiday, severance or similar benefits . . . " Title 29 U.S.C. § 186(c)(6).

"ERISA applies to any employee benefit plan if it is established or maintained by an employer or an employee organization engaged in commerce or in any industry or activity affecting commerce." *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir.1990). "An ERISA plan is established 'if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.' " *Id.* at 240–241 (citation omitted).

Severance plans qualify as welfare plans, but only when the conditions of the plan require an ongoing administrative setup to monitor and facilitate the provisions of the benefits due under the plan. *See Whittemore v. Schlumberger Tech. Corp.*, 976 F.2d 922 (5th Cir.1992). A sim-

ple one-time, lump-sum payment triggered by a single event that basically constitutes little more than the writing of a check with no further responsibility does not qualify as an employee welfare benefit plan under ERISA. *See Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 12, 107 S.Ct. 2211, 2218, 96 L.Ed.2d 1 (1987) (footnote omitted); *Krug v. Caltex Petroleum Corp.,* 864 F.Supp. 11 (N.D.Tex.1994).

■ The Stroh Brewery Company Severance Policy at issue in this case states in its provisions that it "is an 'employee welfare benefit plan' under Section 3(1) of ERISA" and that the controlling law regarding the terms of the plan "shall be construed and determined according to ERISA." (Ex. "A" to Def.'s Resp. to Pl.'s Mot. to Remand pp. 11 and 13.) Simply because the plan defines itself as being controlled by ERISA does not, however, automatically make it so. *Krug,* 864 F.Supp. 11, 13 (N.D.Tex.1994).

Rather, the court has to look at the particular aspects of the severance plan and find evidence of an ongoing administrative set-up to facilitate benefits in order to see whether it would fit under ERISA's framework. Stroh's Severance Policy lists its commencement date as being December of 1996, without any terminating date thereafter. (Ex. "A" to Def.'s Resp. to Pl.'s Mot. to Remand p. 12.) The plan's provision also include an "ADMINISTRATION" section that provides for an "administrative committee or individual" to serve as "Plan Administrator" and "fiduciary with respect to the Plan, to carry out the day-to-day administration of the Plan." *Id.,* p. 9. Under the "ADMINISTRATION" provisions of the plan, the Plan Administrator has several duties, including:

> (a) To construe and interpret the Plan and decide all questions concerning length of company service, the existence of a severance event and eligibility for participation and benefits to the maximum extent permitted and/or contemplated under *Firestone Tire & Rubber Company v. Bruch,* 489 U.S.

101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and all such constructions, interpretations and decisions shall be final and binding on all persons for all purposes;

> (b) To prescribe procedures to be followed by participants for applying for benefits under this Plan;

> (c) To prepare and distribute, in such manner as the Administrator determines to be necessary or appropriate, information explaining the Plan;

> (e) To adopt bylaws and regulations as [s]he deems desirable for the conduct of Plan affairs.

> (g) To take any actions [s]he deems necessary or appropriate to comply with laws and regulations relating to the maintenance of records, notification to participants, reports to the United States Department of Labor, and all other requirements applicable to the Plan.

*Id.,* pp. 9–11.

Stroh's Severance Policy also provides an articulated "CLAIMS PROCEDURE" provision that states the steps that a potentially qualified employee has to go through in order to process a claim under the policy. An employee who is determined to be ineligible for benefits under the plan may file with the Plan Administrator a signed application for benefits specifically identifying the benefits claimed and describing the circumstances entitling the employee to payment of benefits. *Id.,* p. 12. The Administrator then has 90 days to respond to the employee's claim with either an approval of the claim or a written denial that "1) states the specific reasons for denial with specific references to pertinent Plan provisions; 2) a description of any additional materials or information necessary for the participant to perfect the claim and an explanation of why the materials or information is necessary; and 3) an explanation of the Plan's claim review procedure." *Id.* The employee, in response to a denial by the Plan Administrator, may ask for a formal review of the

Administrator's decision within 60 days of the Administrator's denial. *Id.* The administrator then may hold a formal hearing to review any or all of the issues raised by the employee. *Id.*

The Stroh Severance Policy also provides both compensation and medical/dental benefits for a variable period of time after the severance between the employee and the company. Depending on his/her time of service for the company, the participating employee can receive salary and insurance benefits for up to 5 months after the severance. *Id.* at pp. 5 and 8.

■ The provisions included in Stroh's Severance Policy provide evidence to this court that the plan does have an on-going administrative scheme that would place it within the regulatory regime constructed by ERISA. The provisions show this plan to be not a one-time, lump-sum payment to the participant employee, but a regulated benefits plan incorporating an ongoing administrative scheme that requires the review of both an appointed Administrator and Stroh's Board of Directors. Accordingly, this court finds that the Stroh Severance Policy qualifies as a "employee welfare benefits plan" under the cited case law and Title 29 U.S.C. § 1002(1) of the ERISA law. The concomitant conclusion is that defendant Stroh's removal of this lawsuit to this federal forum from state court was proper under § 1331.

## II. ERISA Preempts Hobbs' State Law Claims.

■ In his complaint against Stroh, plaintiff Hobbs alleges the Mississippi common law of claims of breach of contract and fiduciary relationship, bad faith, fraud, gross negligence, intentional infliction of emotional distress and punitive damages. ERISA contains a preemption clause which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan." Title 29 U.S.C. § 1144(a). State law claims, regardless of how they are pleaded, are preempted if they "relate to" an ERISA plan. *See FMC Corp. v.*

*Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

In *Hubbard v. Blue Cross and Blue Shield,* 42 F.3d 942, 945 (5th Cir.1995), the court stated that ERISA preemption is applicable when:

(1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities— the employer, the plan and its fiduciaries, and the participants and beneficiaries.

■ Because Hobbs' claims are founded on and "relate" to the denial of severance benefits under an ERISA severance plan and are centered on the relationship between himself and his former employer, Hobbs' state law claims are preempted by the federal ERISA law. *See Perdue v. Burger King Corp.,* 7 F.3d 1251 (5th Cir. 1993) (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62–63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)).

## CONCLUSION

This court, thus, finds that it has federal question jurisdiction over this lawsuit by virtue of ERISA and § 1331. This court further finds that Hobbs' state law claims are preempted by ERISA. Having now found federal court jurisdiction, this court need not address Stroh's § 1332 federal diversity jurisdiction arguments.

By denying plaintiff's motion to remand, this court retains jurisdiction of the suit and schedules it for regular proceedings under its calendar docket.