Tommy HOLCOMB and Lorrie
Holcomb, Plaintiffs,

v.

PILOT LIFE INSURANCE COMPANY,
Superior Products Sales, Inc., Tennessee and Southern Insurance Services,
Inc., and David C. Graham, Defendants.

No. EC88–64–S–D.

United States District Court,
N.D. Mississippi, E.D.

Jan. 9, 1991.

Roy O. Parker, Roy O. Parker and Associates, Tupelo, Miss., for plaintiffs.

Robert K. Upchurch, Holland, Ray & Upchurch, Tupelo, Miss., for defendant Pilot Life Ins. Co.

John S. Hill, Mitchell, McNutt, Threadgill, Smith & Sams, Tupelo, Miss., for defendant Superior Product Sales, Inc.

Robert G. Krohn, Price, Krohn & McLemore, Corinth, Miss., for defendant David C. Graham.

OPINION

SENTER, Chief Judge:

Plaintiffs commenced this action in the Circuit Court of Lee County, Mississippi, seeking actual, compensatory, and punitive damages due to the alleged failure by the original defendants, Pilot Life Insurance Company and Superior Products Sales, Inc., to pay benefits due under a group insurance plan. Pilot Life and Superior Products removed the case to this court, invoking the court's jurisdiction under 28 U.S.C. § 1441 based on the preemptive force of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Thereafter, plaintiffs were allowed to amend their complaint to allege alternative grounds for relief under ERISA: (1) failure to comply with requests for information under 29 U.S.C. § 1132(a)(1)(A) and (C); (2)

breach of fiduciary duties under 29 U.S.C. § 1104(a); and (3) liability for breach by co-fiduciaries under 29 U.S.C. § 1105. Plaintiffs were subsequently allowed to file a second amended complaint to include the remaining two defendants, Tennessee and Southern Insurance Services, Inc., the administrator of the subject group plan, and David C. Graham, the president of Tennessee and Southern.[1]

This cause is before the court on plaintiffs' motions for partial summary judgment and for summary judgment and remand. Defendant Pilot Life has also made a suggestion of nonjoinder. The court will first address plaintiffs' motion for summary judgment and remand since it involves the question of whether this court has jurisdiction over this cause, i.e., whether the group insurance plan at issue is an "employee welfare benefit plan" for purposes of ERISA.

## FACTS

The subject group plan—namely, Superior Products Sales, Inc. Group Insurance Plan—was established effective January 1, 1985, by Superior Products to provide, among other things, medical, surgical, and hospital care for its employees. The plan was amended effective May 1, 1985, to include employees of Superior Products' affiliate companies, Briarwood Furniture Manufacturing, Inc. and Royal Products, as eligible participants under the plan. This plan was self-funded by these three employers (Superior Products, Briarwood, and Royal Products) for claims of less than $5,000 and was funded by the purchase of an insurance policy underwritten by Pilot Life for claims exceeding $5,000. On October 21, 1985, Pilot Life contracted with Tennessee and Southern, with the approval of Superior Products, to be the plan administrator.

On August 3, 1985, plaintiff Tommy Holcomb was severely injured in an automobile accident and, as a result, incurred over $100,000 in medical bills. At the time of this accident, Mr. Holcomb was an employee of Briarwood and was a participant under the subject group plan. Nevertheless, his claims were denied, and plaintiffs thereafter initiated their state court suit.[2]

Defendants Pilot Life and Superior Products have admitted that Mr. Holcomb's claims were erroneously denied by Tennessee and Southern. Consequently, Superior Products tendered to the plaintiffs the $5,000 self-funded portion of the claim;[3] Pilot Life tendered the remaining $99,710.43. These payments, which were tendered jointly to plaintiffs, Mr. Holcomb's medical providers, and plaintiffs' attorneys were rejected by plaintiffs.[4]

## DISCUSSION

Plaintiffs contend that this court is without jurisdiction to hear this case because the subject group plan is not a "plan" as defined by ERISA. Specifically, plaintiffs allege that defendants did not intend to establish an ERISA plan; rather, "Superior Products only intended to purchase, and Pilot Life Insurance Company only intended to sell a group insurance policy." Plaintiffs point to the failure of the plan (1) to provide for named fiduciaries to control and manage the operation and administration of the plan, (2) to provide for adminis-

---

1. As alternative grounds for relief against Tennessee and Southern, plaintiffs allege that Tennessee and Southern breached its fiduciary duties under 29 U.S.C. § 1104 and is liable for breach by co-fiduciaries under 29 U.S.C. § 1105.

2. Tennessee and Southern initially denied Mr. Holcomb's claim on the ground that Mr. Holcomb's last day at work was July 28, 1985, and that his premiums were only paid through August 1, 1985.

3. Superior Products, rather than Briarwood, tendered the self-funded portion because Briarwood is no longer a business entity.

4. Defendants contend that Mr. Holcomb and/or his wife as his duly authorized representative assigned to various medical providers all benefits due Mr. Holcomb under the subject group plan. Mr. Holcomb maintains that these assignments are not valid but "recognizes that there is a material issue of fact and law, as to whether the medical assignments are valid." It is this question regarding the validity of the assignments which is at the heart of the suggestion of nonjoinder made by defendant Pilot Life.

trative appellate procedures for reviewing denied claims, and (3) to comply with ERISA's reporting and disclosure provisions. Plaintiffs also argue that Briarwood, Mr. Holcomb's employer, was not a statutory "employer" and thus Mr. Holcomb was not a statutory "employee."

## I.

■ An "employee welfare benefit plan" is defined as

any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1). Quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc), the Fifth Circuit has recently held that an ERISA plan is established " 'if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.' " *Memorial Hospital System v. Northbrook Life Insurance Co.*, 904 F.2d 236, 240 (5th Cir. 1990). Although "the purchase of an insurance policy does not, in and of itself, establish the existence of an ERISA plan," such a purchase by an employer does offer some evidence of an intent to provide an ERISA plan. *Memorial Hospital System*, 904 F.2d at 242. Adopting the reasoning of the *Donovan* court, the Fifth Circuit stated, "the purchase of insurance does not conclusively establish a plan, fund, or program, but the purchase is evidence of the establishment of a plan, fund, or pro-

gram; the purchase of a policy ... covering a class of employees offers substantial evidence that a plan, fund, or program has been established."

*Memorial Hospital System*, 904 F.2d at 242 (citation omitted).

Plaintiffs rely on 29 U.S.C. § 1102(a) and (b) as the statutory provisions which determine whether an ERISA plan has been established.[5] Such reliance is misplaced, however. As discussed above, the Fifth Circuit has expressly held that the question of whether a given group insurance plan has been established as an ERISA plan is to be answered in light of the *Donovan* test. *Memorial Hospital System*, 904 F.2d at 240. Further, the court has stated that the fiduciary responsibility addressed in 29 U.S.C. § 1102, i.e., the establishment and maintenance of a written plan which contains the requisite elements, "only arises once it has been determined that ERISA covers an employer's plan, and is not itself a prerequisite to coverage." *Memorial Hospital System*, 904 F.2d at 241 n. 5 (citing *Donovan*, 688 F.2d at 1372). This is in accord with the holdings of other courts.

For example, in *Comprehensive Care Corp. v. Doughtry*, 682 F.Supp. 516 (S.D. Fla.1988), the plaintiff argued that the employee benefit plan at issue was not governed by ERISA because it failed to meet specific content and description requirements of the Act. *Doughtry*, 682 F.Supp. at 517. The district court held:

The focus of Doughtry's argument ... is misplaced. The court must decide not whether Aetna [the insurer] complied with ERISA, but whether the insurance policy falls under the purview of ERISA. Congress specifically intended *all* group health insurance programs for employees to be governed exclusively by ERISA....

\*   \*   \*   \*   \*   \*

---

**5.** Specifically, section 1102(a) requires that an ERISA plan be "established and maintained pursuant to a written instrument" which names the fiduciary who "shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1) and (2). Section 1102(b) enumerates the requisite fea-

tures of such a written plan, namely, the procedures for financing the plan, allocating the responsibilities for operation and administration of the plan, and amending the plan, and the basis on which payments are made to and from the plan. 29 U.S.C. § 1102(b).

Moreover, Congress never intended to exclude an employee welfare-benefit plan from ERISA's scope just because the plan failed to meet the disclosure requirements. This congressional intent is manifested in 29 U.S.C. § 1131, which authorizes criminal penalties for violations of the reporting and disclosure provisions of ERISA. If plans in violation of these requirements were not to be within ERISA coverage, Congress would not have provided criminal penalties for plans that failed to meet these ERISA conditions.

*Doughtry*, 682 F.Supp. at 517–18 (emphasis in original). *See also Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) ("Once established, ERISA operates to protect an employee's interest in the welfare benefit program regardless of whether the employer complies with the administrative and reporting requirements detailed under ERISA.").

■ Consequently, applying the *Donovan* test, the court is of the opinion that based on the evidence before the court, including the booklet-certificate issued to eligible employees of Superior Products and its affiliate company, Briarwood, this plan is covered by ERISA. In fact, a perusal of the table of contents of the booklet-certificate informs a reasonable person of

(1) the intended benefits ("LIFE INSURANCE," "ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS," and "MEDICAL BENEFITS"),

(2) the beneficiaries ("Who Can Be Insured" and "Insurance For Your Dependents"),

(3) the source of financing ("THE PLAN"),[6] and

(4) the procedures for receiving benefits ("HOW TO CLAIM BENEFITS").

Here, there was more than the mere purchase of an insurance policy. Superior Products and Briarwood not only self-funded part of the subject plan but also performed other tasks, including enrollment of the participants and explanation of available coverage, maintenance of participant rolls, collection of premiums (which were then forwarded to Tennessee and Southern), dissemination of summary plan booklets, assistance in completion and submission of claim forms by participants, assistance in obtaining information necessary for a claims decision, and removal of participants when they left employment or desired to discontinue participation in the plan.

Plaintiffs contend that because Briarwood "apparently" did not contribute toward the payment of the employees' premiums, it was no more than a mere advertiser of the policy. In support of this position, plaintiffs rely on 29 C.F.R. § 2510.3–1(j). This regulation explains that the term "employee welfare benefit plan" does not in-

---

6. The employee is advised in this section of the booklet-certificate that the medical benefits are partly self-funded by the "employer" and partly insured by Pilot Life and that the life insurance and accidental death and dismemberment benefits are fully insured by Pilot Life. This division in the financing of the plan is explained further:

> The first $5,000 of Major Medical Benefits paid for you, or one of your dependents, in a Policy Year are self-funded by Superior Product Sales, Inc.
>
> When you, or one of your dependents, incur Covered Expenses during a Policy Year which result in payments of $5,000 by your employer's self-funded Major Medical Benefits plan, benefits for other Covered Expenses incurred during that Policy Year will be paid under the insured Major Medical Benefits provisions. Plaintiffs rely on part of this language to support their position "that Superior Product

Sales, Inc., not Briarwood, undertook the self-insurer obligation." Plaintiffs contend that defendants have offered nothing except "bald contention[s]" to prove Briarwood's role in connection with the subject policy. However, in opposition to the present motion, defendants submitted the affidavit of Mr. Doyle Ward, the controller of Superior Products who supervises the subject insurance plan, who states:

> [T]he source of financing medical benefits provided by the subject plan consists of a self-insured fund for claims of less than $5,000.00 that is paid by the beneficiary's employer, which would be either Superior Products Sales, Inc. or one of the affiliated companies such as Briarwood Furniture Manufacturing, Inc., and that the source of financing for medical claims exceeding $5,000.00 was a policy of insurance underwritten by Pilot Life Insurance Company.

clude a group insurance program offered by an insurer to employees under which

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). The Fifth Circuit has determined that "[t]he 'and' connector indicates that the existence of any one of the four criteria listed in the regulation would prevent a group insurance plan, otherwise qualifying as an ERISA plan, from being excluded from coverage under the Act." *Memorial Hospital System*, 904 F.2d at 241 n. 6 (citing *Kanne v. Connecticut General Life Insurance Co.*, 867 F.2d 489, 492 (9th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989)).

The court is of the opinion that although the evidence is not entirely clear as to whether Briarwood contributed to the premium payments of its employees,[7] the evidence is clear that Briarwood did more than simply publicize the plan to its employees, collect the premiums, and remit them to the insurer.[8] The existence of this criteria therefore "prevents the exclusion of the insurance plan from ERISA coverage." *Kanne v. Connecticut General Life*

*Insurance Co.*, 867 F.2d 489, 492 (9th Cir. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989).

Plaintiffs also assert, as a "hyper-technical point," that because Briarwood was not an "employer" as defined in the Act, the subject plan is not covered by ERISA. Plaintiffs maintain that Briarwood did nothing "in relation to" the subject policy except "possibly" pay part of the premiums and verify whether Mr. Holcomb was an employee of Briarwood on the date of the accident.

"Employer" is defined as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan...." 29 U.S.C. § 1002(5). *Donovan* addressed this point by comparing an employer, which can establish or maintain an ERISA plan, with an individual employee, who cannot. *Donovan*, 688 F.2d at 1373. Certainly, Briarwood was not an employee. The court has already addressed plaintiffs' arguments and found that sufficient evidence exists to show that Briarwood performed various functions "in relation to" the subject plan. The fact that Briarwood is no longer a business entity is irrelevant, as it was Mr. Holcomb's employer at the time of his accident.

■ Finally, plaintiffs request that this court decline to find ERISA coverage on the grounds that to do so is unfair and inequitable as defendants have failed substantially to comply with the regulatory provisions of ERISA. Plaintiffs cite several examples of perceived deficiencies in the plan itself and instances in which defendants have allegedly not complied with the reporting and disclosure requirements of the statute. Specifically, plaintiffs point to defendants' failure in 1985 to file a summary plan description with the Department of Labor and a Form 5500, which documents

---

7. The subject policy does state, however, that the employees must pay *part* of the cost of all insurance.

8. In fact, the evidence indicates that Briarwood was involved to some extent in every level of the plan, from the initial act of enrolling participants in the plan through the final act of sending cancellation notices to Tennessee and Southern when participants left their employment with Briarwood or wanted to discontinue participation in the plan.

transactions under the subject plan, with the Internal Revenue Service as proof that defendants did not intend to establish an ERISA plan "until they were sued in state court, and found it expedient to invoke the pre-emption defense of ERISA." Plaintiffs vigorously argue that Congress did not intend to deprive citizens of state common law remedies when neither the insurer nor the party who set up the insurance policy has complied with the requirements of ERISA.

In response, defendants offer the affidavits of Mr. Ward and Mr. Graham to show defendants' intent to establish an ERISA plan. In his affidavit, Mr. Ward reports that the financial and tax records of Superior Products show that Form 5500 was filed for each calendar year in which such filings were required beginning in 1986. Mr. Graham states in his affidavit that he personally recalls assisting personnel at Superior Products and Briarwood in compiling information and documentation needed to complete Form 5500 each year that Tennessee and Southern was administrator of the subject plan.[9]

This court has already determined that the alleged failure of defendants to comply with every requirement of ERISA has no bearing on whether this plan is covered by ERISA. What defendants ask the court to do now is declare that defendants are estopped from asserting ERISA preemption as a defense because of their alleged noncompliance with the Act. Although the Fifth Circuit has not addressed this question, other courts have considered the issue. For example, in *Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320 (2d Cir. 1985), plaintiffs presented this precise argument, alleging that the employer had failed to publish or file an annual report, a financial statement, a plan description, or a statement of plan modifications and had not designated a fiduciary for the plan or establish a claims procedure as required by ERISA. *Gilbert*, 765 F.2d at 328. The Second Circuit held:

Plaintiffs argue that since Burlington benefited from its failure to comply with these statutory requirements, it should be estopped from relying on the Act to avoid its contractual and state law obligations.

Burlington responds that it would be incongruous for an employer maintaining an informal plan to be able to circumvent the Act by failing to comply with its requirements. Courts that have accepted plaintiffs' argument have done so in the context in which an employer sought to avoid liability under ERISA. A different situation is presented here—the employer does not seek to avoid the strictures of ERISA by means of previous noncompliance, but rather raises preemption as a legal defense to state law obligations otherwise applicable to it. A serious risk of unfairness may exist when an employer that has never sought to comply with ERISA wants to use the Act's broad preemption provision to avoid potential liability to its employees under state law.

In *Blau [v. Del Monte Corp.]*, 748 F.2d 1348 [ (9th Cir.1984) ], this dilemma was appropriately resolved. There it was held that the state law claims were preempted, even though the employer had totally failed to comply with ERISA.

*Gilbert*, 765 F.2d at 328 (citations omitted).

Against this backdrop, this court concludes that defendants are not estopped from asserting ERISA preemption as a defense even though they may not be in total compliance with the Act.

Because the subject plan is a "plan" as defined by ERISA, this court has jurisdiction to hear this case. Plaintiffs' motion for summary judgment and remand is therefore denied.

In their motion, plaintiffs did not attempt to refute the preemptive force of ERISA with regard to their state law claims in the event this court found ERISA coverage, nor can they do so. *See Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct.

---

**9.** Plaintiffs' evidence shows that no Form 5500 was filed with the Department of Labor for

1985.

1549, 95 L.Ed.2d 39 (1987); *Brock v. Primedica, Inc.*, 904 F.2d 295 (5th Cir. 1990). As plaintiffs' state law claims for punitive or other extra-contractual damages are preempted by ERISA, they are hereby dismissed. This dismissal of plaintiffs' state law claims in no way affects plaintiffs' claims arising under ERISA.

## II.

Plaintiffs have also moved for partial summary judgment as to defendants' obligation to pay the requested medical benefits. Defendants oppose the motion on the ground that there exist in this case valid assignments of these benefits to Mr. Holcomb's medical providers. Defendants contend that entry of partial summary judgment "would, in effect, cause [these] Defendant[s] to ignore the Plaintiff's assignments to the Plaintiff's medical providers and would subject [these] Defendant[s] to additional claims by the medical providers which medical providers are, by virtue of the assignments, the real parties in interest."

The court is of the opinion that plaintiffs' motion for partial summary judgment is moot in light of defendants' actions, including the filing of an interpleader action,[10] defendants' admissions that Mr. Holcomb's claims were erroneously denied, and their repeated attempts to tender funds to plaintiffs, their attorney, and the medical providers. These actions indicate that defendants admit their obligation to pay certain benefits, but they do not admit to whom the funds are due.

## III.

In its answer to plaintiffs' first amended complaint, defendant Pilot Life made a suggestion of nonjoinder pursuant to Rule 21 of the Federal Rules of Civil Procedure. In this suggestion, Pilot Life maintains that the assignments to the medical providers are valid and that consequently "a full adjudication of the rights of the Plaintiffs

and the medical providers cannot be had unless the medical providers are afforded an opportunity to assert their claims to the benefits." In light of the interpleader action filed by defendants, the court finds the suggestion of nonjoinder to be moot. All parties having an interest in the benefits will be allowed to assert their claims in the interpleader action. No funds will be dispersed in connection with the ERISA action until such time as the interpleader action is concluded.

---

**10.** Defendants have filed an interpleader action, *Jefferson–Pilot Life Insurance Co. and Superior Products Sales, Inc. v. Tommy Holcomb, et al.,* EC90–40–S–O. In this action, Pilot Life and

Superior Products named as defendants the Holcombs, Roy O. Parker and Associates, P.A., and fifteen medical providers. They also deposited $104,044.23 into the registry of the court.