Glenda COOLEY, Plaintiff,

v.

PROTECTIVE LIFE INSURANCE COMPANY, Defendant.

No. 92cv3(P)(N).

United States District Court, S.D. Mississippi, Hattiesburg Division.

March 3, 1993.

---

Michael McMahan, Maura McLaughlin, Hattiesburg, MS, for plaintiff.

Frank Montague, Hattiesburg, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This matter is before the Court on Motion For Partial Summary Judgment, filed on behalf of the Plaintiff, moving the Court to find that none of Plaintiff's claims arise under ERISA and thus are not preempted thereby. The Court, having reviewed the motion, the briefs, the authorities cited, and being otherwise fully advised in the premises, finds as follows, to-wit;

## FACTUAL BACKGROUND

On September 21, 1990, Plaintiff, a grade school teacher with the Hattiesburg Public School District, applied for health insurance coverage under a policy of insurance issued to the Mississippi Association of Educators (MAE) by the Defendant. On September 24, 1990, Plaintiff was diagnosed as having mitral stenosis. Plaintiff began undergoing treatment for the condition and submitted claims to Defendant. Defendant initially denied all of Plaintiff's claims. She hired an attorney in September, 1991, who corresponded with Defendant culminating in all of Plaintiff's outstanding claims being paid.

Plaintiff alleges that during the time Defendant was denying her claims, she needed open heart surgery, which she could not afford, and that her failure to receive same resulted in physical and emotional trauma. She also alleges that the mounting bills for the treatment she did receive caused her to declare bankruptcy and that this exacerbated the emotional trauma she suffered. Plaintiff is currently totally physically disabled as a result of her medical condition.

Plaintiff sued in state court alleging a bad faith denial of her original claims, which were eventually paid. Defendant removed the action to this court asserting ERISA preemption of all of Plaintiff's claims. Plaintiff has moved for a summary judgment ruling that none of Plaintiff's claims are preempted by ERISA. Plaintiff has a separate motion to remand to state court if the Court finds that ERISA does not preempt her claims because the amount in controversy, at least as pleaded in the complaint, is less than $50,000.

## FIFTH CIRCUIT TEST FOR ERISA PREEMPTION

■ The Fifth Circuit has devised a comprehensive three part test in determining whether a particular plan or program qualifies as an "employee welfare benefit" plan subject to ERISA preemption. Under that test, the Court must determine whether a plan (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA "employee benefit plan"—establishment or maintenance by an employer or employee organization intending to benefit employees or members. *Meredith v. Time Ins. Co.*, 980 F.2d 352 (5th Cir.1993).

## ERISA PLANS

Pursuant to 29 U.S.C. § 1002 there are two types of "employee benefit plans". They are "employee welfare benefit plans" and "employee pension benefit plans".

ERISA defines the former as:

"... any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participates or their beneficiaries, through the purchase of insurance or otherwise, ... (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment...."

29 U.S.C. § 1002(1).

The first step in the analysis of whether ERISA applies is to make a determination of whether or not the particular arrangement is an "employee welfare benefit plan" as defined above. The determination of whether or not the arrangement is an "employee welfare benefit plan" is generally a question of fact governed by a set of well established legal standards. *Gahn v. Allstate Ins. Co.*, 926 F.2d 1449 (5th Cir.1991).

## LEGAL STANDARDS DEFINING ERISA PLANS

■ The initial inquiry as to whether the "arrangement" is in fact a "plan" is governed by a test first articulated by the Eleventh Circuit in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982) (en banc), and accepted by this Circuit in *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir.1990). That test is as follows:

In determining whether a plan, fund or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.

Of course, there need be no formal document designated as "the Plan" to establish

that an ERISA plan exists. *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d at 241. Additionally, the purchase of an insurance policy does not, in and of itself, establish the existence of an ERISA plan, "... but the purchase is evidence of the establishment of a plan, fund, or program; the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established." *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d at 242 quoting *Donovan v. Dillingham*, 688 F.2d at 1373.

This Court is of the opinion that a reasonable person could easily ascertain that the intended benefits were medical coverage; that the beneficiaries were members and *nonmembers* of MAE enrolled in the program; that the source of financing was by premiums paid by the members or nonmembers themselves or by the school district on behalf of the members or nonmembers and not by MAE; and that the procedure for receiving benefits was to make a claim with the insurer through forms provided presumably by Defendant as there is no evidence that they were provided by MAE.

Based on the foregoing, the Court might well conclude that the program was in fact an "employee welfare benefit plan." However, Plaintiff additionally asserts that the arrangement at issue is excluded from ERISA preemption because it does not meet the statutory definition, contained in 29 U.S.C. § 1002, of an "employee welfare benefit plan" because the plan allows nonmembers of MAE to participate in the plan. Plaintiff relies on *Wisconsin Educ. Ass'n Ins. Trust v. Iowa State Bd.*, 804 F.2d 1059 (8th Cir.1986), to support her position.

In *Wisconsin Educ. Ass'n*, the Eighth Circuit held that an insurance trust providing health benefits to union and nonunion members was not an employee welfare benefit plan subject to ERISA preemption because it did not "provide benefits for its participants" as contemplated by ERISA. In other words, by providing benefits for nonmembers of the union, the plan was providing benefits for persons other than "participants or their beneficiaries" as those terms are defined by ERISA. In so doing, the plan did not comply with the statutory definition of an employee welfare benefit plan and thus could not be subject to ERISA preemption. *See Wisconsin Educ. Ass'n Ins. Trust v. Iowa State Bd.*, 804 F.2d at 1062.

Defendant argues that *Wisconsin Educ. Ass'n* was simply decided wrongly. However, it has cited no cases overruling it. In fact the Fifth Circuit has cited *Wisconsin Educ. Ass'n* with approval for the proposition that non-employee welfare benefit plans are subject to state insurance regulation. *See MDPhysicians & Associates v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir.1992). This Court finds the reasoning of the *Wisconsin Educ. Ass'n* case persuasive and holds that the arrangement at issue here does not likely qualify as an "employee welfare benefit plan" under ERISA. However, the Court does not rest its conclusion only on that issue.

EMPLOYEE BENEFIT PLANS AND ERISA PREEMPTION

■ If the Court were to find that the program at issue is an employee benefit plan, the plan does not automatically qualify for ERISA coverage. *Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir.1991). Only those employee welfare benefit plans that are established or maintained by an employer or employee organization for the purpose of providing certain benefits to its employees or members, which do not fall within the safe-harbor provision established by the Department of Labor, are covered by ERISA. *Meredith v. Time Ins. Co., supra.*

If the Court determines that the program is "an employee benefit plan", it must then look to Department of Labor regulations to determine if the arrangement is one *excluded* from ERISA's coverage. *Id. See also Kidder v. H & B Marine, Inc.*, 932 F.2d 347 (5th Cir.1991). If the arrangement does not meet the criteria for exclusion from ERISA coverage under the Department of Labor regulations, then the court must go on to determine whether the plan meets the criteria adopted in this circuit which determine what plans *are* covered by ERISA. *Kidder, supra*, and *Gahn, supra.*

## DEPARTMENT OF LABOR REGULATIONS

The Department of Labor regulations provide that the term "employee welfare benefit plan";

... shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j) (1988). *See also, Terry v. Protective Life Ins. Co.*, 717 F.Supp. 1203 (S.D.Miss.1989).

The Fifth Circuit has opined that the presence of the *"and"* connector indicates that the existence of any one of the four criteria listed in the regulation would prevent a group insurance plan, otherwise qualifying as an ERISA plan, from being excluded from coverage under the Act. *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir.1990). In other words, if any one of the factors is present, the plan is not excluded from ERISA coverage by the regulations.

The proof clearly shows that Plaintiff was an employee of the Hattiesburg Public School District for the 1990–1991 school year, but she was not a member of MAE at the time she applied for coverage under the Protective Life policy. The policy issued by Defendant to MAE allowed members or *non-members* of the association to participate in the health plan and membership in the plan was completely voluntary. For non-certified employees, such as janitors and bus drivers, the school district employer paid no premiums. It did pay a small portion of the premiums for certified employees like Plaintiff. However, the school district is not the one to whom the policy was issued. It was issued to the MAE who paid no premiums for any its members let alone for its non-members, such as Plaintiff. It did pay premiums for its own employees, which is not at issue here.[1]

■ Defendant points out that MAE is an "employee organization" as defined in ERISA and is thus an entity capable of "establishing and maintaining" a "welfare benefit plan" subject to ERISA preemption. The Court does not disagree with this consistent with the possible exclusion of the plan from ERISA preemption by the "participant" definition discussed in *Wisconsin Educ. Ass'n Ins. Trust v. Iowa State Bd.*, *supra.* However, Defendant also asserts "... that MAE established a program through the *purchase* of group insurance to provide medical care or benefits for its *members*, employees and their dependents."

MAE may well have established a plan for its employees, but there is no proof in the record that MAE purchased group insurance for anyone else, especially not its nonmembers. In fact, all MAE had done for several years previously was to endorse the Protective Life policy and to advertise it in their publications. MAE had been paid $10,000 per year for this endorsement. However, in 1990, the Mississippi Legislature had established a group insurance trust for school personnel effective in 1991. In light of this development, MAE notified Defendant, prior to the start of the 1990–1991 school year, that it would no longer endorse the Defendant's policy and thus was not paid its usual endorsement fee.

---

1. It is not clear from the record before the Court whether or not the MAE employees were enrolled under the same policy as Plaintiff. However, that issue has no bearing on the ultimate finding of the Court.

MAE in no way "purchased" this group policy for the benefit of its members (except perhaps its own employees) or their beneficiaries nor its nonmembers. MAE paid no premiums on behalf of Plaintiff or others and performed no administrative tasks involved with the operation of the program. Membership in the program was entirely voluntary, including both members as well as nonmembers. The sole function of MAE was to permit Defendant to publicize the program to its members and nonmembers. As stated above, MAE did endorse the program and receive an endorsement fee in previous years, but that was not done during the relevant time when Plaintiff purchased insurance under the plan.

▮ Ultimately, in order for ERISA preemption to apply, the plan, fund, or program requires some control, administration, or responsibility on the part of the employee organization.

To determine whether an employer "established or maintained" an employee benefit plan, "the court should [focus] on the employer ... and [its] involvement with the administration of the plan." *Gahn,* 926 F.2d at 1452. Thus, if an employer does no more than purchase insurance for her employees, and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, she has not established an ERISA plan. *Kidder,* 932 F.2d at 353; *Memorial Hospital,* 904 F.2d at 242. As this court explained in one of its early cases on the subject,

[c]onsidering the history, structure and purposes of ERISA, we cannot believe that that Act regulates bare purchases of health insurance where ... the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits.

*Taggart Corp. v. Life and Health Benefits Admin., Inc.,* 617 F.2d 1208, 1211 (5th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981).

*Hansen v. Continental Ins. Co.,* 940 F.2d at 978.

However, it is unnecessary for this Court to go beyond the second step in deciding whether or not the program involved here is an ERISA plan because:

Regulations promulgated by the Department of Labor state unequivocally that a group or group-type insurance program is not an ERISA plan if the [employee organization] does not contribute to the payment of premiums, the participation by the [members] in the program is voluntary, the sole function of the [employee organization] is, without endorsing the program, to publicize the program and to collect premiums, and the [employee organization] does not profit from the insurance program. 29 C.F.R. § 2510.3–1(j) (1988).

*Terry v. Protective Life Ins. Co.,* 717 F.Supp. at 1205.

▮ The burden is on the Defendant, Protective Life Insurance Company, to establish the existence of a plan or program which would invoke ERISA's exclusive remedy provisions, since it is the one asserting ERISA preemption. *See Kanne v. Conn. Gen. Life Ins. Co.,* 859 F.2d 96, 99 n. 4 (9th Cir.1988); *see also Murphy v. Inexco Oil Co.,* 611 F.2d 570, 574 (5th Cir.1980), and *Terry,* 717 F.Supp. at 1205.

As in *Terry,* the Defendant in the case *sub judice* has failed to show that the policy issued to MAE is anything other than the type of program described in the Department of Labor regulations. It falls directly within the safe-harbor provisions of the regulations.

### STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

▮ The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his

motion. *Union Planters Nat. Leasing v. Woods,* 687 F.2d 117 (5th Cir.1982). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 114 (5th Cir.1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In re Municipal Bond Reporting Antitrust Lit.,* 672 F.2d 436 (5th Cir.1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods,* 687 F.2d at 119.

Plaintiff has met her burden of demonstrating the lack of a genuine issue of material fact for trial and that she is entitled to judgment as a matter of law on the issue of ERISA preemption. Defendant has failed to rebut with significant probative evidence. Summary judgment in favor of Plaintiff is appropriate.

IT IS THEREFORE ORDERED THAT Plaintiff's motion for Partial Summary Judgment is GRANTED.

IT IS FURTHER ORDERED THAT Defendant shall have fifteen days from the date this order is filed to respond to Plaintiff's Motion to Remand.

SO ORDERED AND ADJUDGED.