Julie Woods **DAVIS**, Plaintiff,

v.

**AIG LIFE INSURANCE**, Defendant.

Civil Action No. 3:94–cv–512WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 31, 1995.

Michael S. Allred, Michael Dennis Rawls Stevens, Allred & Donaldson, Jackson, MS, for Julie Woods Davis.

William F. Ray, Lynn Plimpton Risley, Watkins & Eager, Jackson, MS, for AIG Life Insurance Company.

## *MEMORANDUM OPINION AND ORDER*

WINGATE, District Judge.

Before the court is the motion of the defendant AIG Life Insurance Company for summary judgment pursuant to Rule 56(b),[1] Federal Rules of Civil Procedure, asking the court to dismiss plaintiff's lawsuit in its entirety. Plaintiff Julie Woods Davis filed this action after the defendant refused to pay beneficiary proceeds to her from her deceased husband's Blanket Travel Accident Insurance Plan ("The Plan") which covered injuries sustained on business trips. Plaintiff's husband, covered under the Plan, died on a business trip. Plaintiff says she is entitled to the policy proceeds; defendant says she is not because her husband did not die in an "accident," as defined by the policy. Predicated necessarily upon the contention that the Plan here qualifies as an "employee welfare benefit" plan subject to the Employee Retirement Income Security Act of 1974 (ERISA), Title 29 U.S.C. § 1101, *et seq.*, defendant's summary judgment motion argues that plaintiff's state law claims should be dismissed because they are preempted by

---

1. Rule 56(b) of the Federal Rules of Civil Procedure provides:

(b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

ERISA. Next, defendant argues that since ERISA requires exhaustion of administrative remedies plaintiff's ERISA claim, too, should be dismissed because plaintiff deliberately ignored the administrative appeal process. In agreement with the defendant on these points, this court grants defendant's motion for summary judgment.

Plaintiff Julie Woods Davis, the wife of decedent Mark A. Davis, filed this action in this court on August 23, 1994, six months after the defendant, AIG Life Insurance Company, notified her that her claims for benefits under its Plan had been denied. Plaintiff's complaint, which urges claims under Mississippi state law of breach of contract and bad faith refusal to pay, asserts diversity of citizenship, Title 28 U.S.C. § 1332,[2] as the jurisdictional base for this lawsuit. Defendant, however, asserts that this action should properly be construed as a dispute controlled by ERISA, and, thus, here in this court pursuant to Title 28 U.S.C. § 1331.[3]

### *Facts*

Plaintiff's husband, Mark A. Davis, was an employee of Ethyl Corporation. On May 15, 1993, he left his home in Baton Rouge, Louisiana and traveled to Calgary, Canada to attend a business meeting. Before returning home from his trip, he traveled to Knoxville, Tennessee to visit friends. While in Knoxville, he supposedly injected an overdose of illegal drugs which killed him. He died on May 22, 1993. Mark Davis' employer, Ethyl Corporation, provided a comprehensive plan of benefits for its employees. Those benefits included group insurance plans, disability insurance, a retirement income plan, a savings plan, and a travel accident insurance plan. Each type of benefit was summarized in an individual summary plan description (SPD); each SPD was contained in the Ethyl Benefits Handbook provided to employees, including Mark Davis. Employees of Ethyl Corpo-

ration were automatically covered under the travel accident insurance plan anytime they traveled on business authorized by Ethyl. The cost of the plan was paid entirely by Ethyl. Ethyl's employees made no contributions. The travel accident insurance plan provided for payment if an employee died while traveling on company business. Payments under the travel accident insurance plan were funded by an insurance policy issued by AIG Life Insurance Company. The insurance policy named Ethyl Corporation as the policyholder.

The plaintiff received written notice of the denial of her claim for benefits via a letter dated February 25, 1994. In that letter, American International Companies, Accident and Health Claims Division, notified plaintiff as follows:

Dear Ms. Davis:

We are writing with regards to your claim for accidental death benefits under Policy # GTP8030755 through the Ethyl Corporation employee group welfare plan.

According to the terms, conditions and limitations of the policy provisions "injury" means "bodily injury caused by an accident occurring while this policy is in force as to the Insured Person and resulting directly and independently of all other causes in loss covered by this policy."

Based on the information available, and federal common law applicable to this policy, this claim does not fall within the policy provisions. According to the information in our file, Mr. Davis' death was caused by a voluntary and self-inflicted overdose of a synthetic drug called Methyl Phenyl Proprionoxy Piperidine. Medical records from the Tau Center Chemical Dependency Program reveal Mr. Davis was a patient from February 11, 1993 through June 26, 1993 for a diagnosis of polysubtance [sic] dependence. These records also indicate Mr. Davis had an extensive history of alco-

---

2. Title 28 U.S.C. § 1332 provides in pertinent part:

    (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

    (1) citizens of different States; ...

3. Title 28 U.S.C. § 1331 provides:

    The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

holism and drug dependency, beginning at age 15, and continuing until his death. Since Mr. Davis had taken drugs since the age of 18 he should have known the possible consequences of his actions. The fatal result of the injection of drugs by Mr. Davis was foreseeable and is not considered an accident. Therefore, we must decline payment of the accidental death benefit.

We regret our decision could not be more favorable. Although we believe our position to be correct, we understand you may disagree with our decision. Therefore, in accordance with the terms and conditions of the Employee Retirement Income Security Act which governs this plan, you have the right to a review through appeal. Your appeal must be submitted in writing to this office no later than 60 days after you receive this written notice. This appeal must include the reason the reason [sic] you disagree with our determination. Additionally, you will need to present any documentation which might affect our decision. In order to perfect your claim, you must submit convincing objective evidence that Mr. Davis' death resulted from a bodily injury caused by an accident. You must demonstrate that Mr. Davis did not intentionally inject the fatal overdose of narcotics.

Plaintiff responded through her attorney, Michael S. Allred, in a letter dated March 25, 1994. Mr. Allred's letter requested various documents, including the claim file:

According to the letter, dated February 25, 1994, from Janine E. Canton, Claims Branch Supervisor, to Julia Woods Davis, your company alleges that the Employee Retirement Security Income Act (ERISA) applies and that the procedures afforded by ERISA must be followed in order for plaintiff to recover sums due and owing to her as a result of the accidental death of her husband, Mark A. Davis. Advise us on the exact procedures which you allege must be followed, including, but not limited to, deadlines, forms that must be completed, evidence that should be produced, the body to which such appeal should be made, and any and all recourse that may be had to other administrative bodies or courts.

Advise us on any and all legal or other arguments that you believe require that Plaintiff must follow the procedures provided by ERISA to recover sums due and owing to her as a result of the accidental death of her husband, Mark A. Davis.

Whether or not your interpretation of ERISA, as binding in this action, is correct, Plaintiff has no meaningful appeal available to her unless, and until, you provide all information requested by us in this letter immediately, and any and all other information, whether written or oral, formal or informal, which relates in any way to your denial of Plaintiff's claim.

American International responded with a letter dated April 14, 1994. With that letter, the plan's representative provided a complete copy of the claim file, and a complete copy of the policy that insured the benefits. American International also claims that attorney Maloney, one of Ms. Davis' other attorneys, received the requested benefit plans and trust documents directly from Ethyl Corporation in response to his direct request for the documents. In a June 16, 1994, letter, American International's representative reminded Mr. Maloney of that fact and acknowledged his "intent to file an appeal in this matter within 60 days of receipt of the information you have requested." Debbie McGrath affidavit, Exhibit "B4" to the motion is attorney Stephen Maloney's letter claiming that "it seems clear that American will continue to reach unsupported conclusions regarding this claim." Mr. Maloney further stated in his letter that Ms. Davis might appeal, subject to (apparently) her attorney's decision regarding futility: "Please be advised that this letter, as well as Michael S. Allred's letter of March 25, 1994, serve as official notice of Claimant's intent to appeal the denial of the claim, *if upon review of the requested information, an appeal is warranted and is not futile.* If a determination is made that an appeal would be futile, then a suit will be promptly filed in the appropriate federal district court."

Thereafter, on August 23, 1994, plaintiff filed this lawsuit. Prior to filing this lawsuit, plaintiff made no attempt to take an adminis-

trative appeal of American International's decision.

### *Erisa Plan?*

■ Congress enacted ERISA to protect employee benefit rights from abuses in administration and investment of the funds collected to establish such plans. *Donovan v. Dillingham*, 688 F.2d 1367, 1370 (11th Cir. 1982). There are two types of "employee benefit plans": "employee welfare benefit plans" and "employee pension benefit plans." *Cooley v. Protective Life Ins. Co.*, 815 F.Supp. 189, 191 (S.D.Miss.1993). American International alleges that the plan at issue here is an employee benefit plan. An employee benefit plan does not enjoy the protection of ERISA merely because it is a benefit plan. To be sheltered by ERISA, the benefit plan must be an "employment welfare benefit plan." *See Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir.1991); *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir.1993). Title 29 U.S.C. § 1002(1) defines an "employee welfare benefit plan" or "welfare plan" as:

(1) Any plan, fund, or program which has heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (a) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services....

■ The Fifth Circuit Court of Appeals has devised a comprehensive test to determine whether a particular plan qualifies as an "employment welfare benefit plan." *Meredith*, 980 F.2d at 355. The *Meredith* Court stated:

We have devised a comprehensive test for determining whether a particular plan qualifies as an "employee welfare benefit plan"; we ask whether a plan: (1) exists; (2) falls within the safe-harbor provision

established by the Department of Labor; and (3) satisfies the primary elements of an ERISA "employee benefit plan"—establishment or maintenance by an employer intending to benefit employees. If any part of the inquiry is answered in the negative, the submission is not an ERISA plan. Our analysis is informed by reference to ERISA itself, including germane indications of congressional intent; and, to the extent Congress has failed to state its intention on the precise issue in question, we refer to permissible interpretations by the agency charged with administering the statute—the Department of Labor.

980 F.2d at 355. The purchase of insurance is not conclusive of whether a plan is governed by ERISA, but the purchase is substantial evidence of the establishment of a plan. *Donovan*, 688 F.2d at 1373.

To determine whether a plan actually exists, the *Meredith* Court has stated that district courts in the Fifth Circuit should employ the test first enunciated in *Donovan*. *Meredith*, 980 F.2d at 355. The *Donovan* Court stated that "[i]n determining whether a plan, fund, or program (pursuant to a writing or not) is a reality, a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." 688 F.2d at 1373.

■ In support of its contention that the policy at issue here is in fact a "reality" as envisioned by *Donovan*, defendant submitted a copy of BTA policy 8030755; a copy of Ethyl's benefits handbook; and the affidavit of Martha Watson, Ethyl's human resources manager. The benefits handbook contains a "summary of benefits" and provides "[i]f you lose your life, ... as a result of an accident while traveling on Company business, this plan pays as follows: ... For loss of: ... life, amount of benefit: ... full amount (10 × your annual basic salary)." The declaration page of the policy, issued by AIG, names Ethyl as the policyholder; three classes of insureds are identified, "all active, full-time employees," "all non-employee directors and guests," and "consultants." Upon com-

mencement of employment with Ethyl, Watson says, each employee is given a copy of the benefits handbook, which contains individual summary plan description, as required by ERISA. According to Watson and the benefit handbook, the BTA policy, under which plaintiff asserted a claim for benefits, covers Ethyl employees anytime they travel on business authorized by Ethyl. The benefits handbook states that Ethyl pays all premiums for the plan; employees make no contributions to the plan; and participation in the plan is automatic, not voluntary. Ethyl was responsible for the administration of plan, specifically, the claims process. The handbook also outlines the rights of Ethyl's employees under ERISA and contains information governing how employees are to file claims for benefits. Plaintiff offers nothing to contradict the policy, the information contained in the benefits handbook, nor the defendant's assertions.

This information, coupled with the other evidence offered by the defendants and uncontested by the plaintiff, persuades this court that a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits under BTA policy 8030755. Accordingly, this court is satisfied that the first factor of the *Meredith* test has been met: a plan exists. Our inquiry, however, does not end merely because this court has determined that a plan does in fact exist.

■ This court must now determine whether this plan falls within the safe-harbor provision established by the Department of Labor. If it does, then the Plan is exempt from ERISA. The four criteria constituting the safe-harbor provision are as follows: "(1) No contributions are made by an employer or employee organization; (2) Participation [in] the program is completely voluntary for employees or members; (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) The employer or employee organization receives no

consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs." 29 C.F.R. §§ 2510.3–1(j)(1)–(4) (1992). To be exempt from ERISA, all four criteria must be satisfied. *Meredith,* 980 F.2d at 355.

Although plaintiff questions whether ERISA governs this dispute, she offers no evidence to show that the plan at issue here is exempt under the safe-harbor provision of ERISA contained in 29 C.F.R. §§ 2510.3–1(j)(1)–(4). Indeed, even if plaintiff were to contend that the plan is exempt from ERISA, her argument would lack potency because she could not satisfy all four criteria set forth in 29 C.F.R. §§ 2510.3–1(j)(1)–(4). For example, there is evidence in the record that: (1) Ethyl, the employer, contributed to the plan; (2) participation in the plan was not voluntary, but automatic; and (3) Ethyl's role was not limited to collecting premiums and remitting them to the insurer. Ethyl collected no premiums from its employees for the travel insurance plan. Because plaintiff cannot demonstrate that the plan at issue satisfies all four criteria contained in 29 C.F.R. §§ 2510.3–1(j)(1)–(4), this court is persuaded that the plan is not exempt from ERISA. *See Meredith,* 980 F.2d at 355.

■ Having first determined that a plan exists, and, next, that the plan is not exempt from ERISA, this court must decide whether the plan satisfies the primary elements of an ERISA. *Id.* at 355. To make this determination, this court looks to two "primary elements of an ERISA 'employee welfare benefit plan' as defined by the statute: (1) whether an employer established or maintained the plan; and (2) whether the employer intended to provide benefits to its employees." *Id.*

As stated above, it is apparent from the evidence that Ethyl established and maintained an "employee welfare benefits plan," by and through the BTA policy it purchased from AIG for its employees. The purpose of this plan was to pay benefits to Ethyl employees, or beneficiaries designated by its employees, in the event any Ethyl employee

lost his or her life while traveling on Ethyl business.

Thus, in light of the evidence submitted by the defendant, and the absence of contrary evidence by the plaintiff, this court is persuaded that this plan qualifies as an employee welfare benefit plan under ERISA.

### Preemption of State Law Claims?

■ Plaintiff has asserted several state law claims. This court need not reach those claims. It is well settled in the Fifth Circuit that "state law claims, regardless of how they are pleaded, are preempted if they 'relate to' an ERISA plan." *Epps v. NCNB Texas,* 7 F.3d 44, 45 (5th Cir.1993); *Hubbard v. Blue Cross and Blue Shield Ass'n,* 42 F.3d 942, 945 (5th Cir.1995); *Rozzell v. Security Services, Inc.,* 38 F.3d 819, 821 (5th Cir.1994); and *Iron Workers Mid–South Pension Fund v. Terotechnology,* 891 F.2d 548, 552 (5th Cir.1990).

### Exhaustion?

■ Having determined that the plan at issue is an "employee welfare benefit plan," this court must now decide whether plaintiff exhausted her administrative remedies before seeking judicial relief. Plaintiff contends alternatively that she has exhausted her administrative remedies, but if not, that she should be excused from any such obligation. Defendant argues to the contrary.

Although the text of ERISA does not expressly mention the exhaustion doctrine, it is well established that federal courts have the authority to require exhaustion of remedies in suits arising under ERISA. *See Simmons v. Willcox,* 911 F.2d 1077, 1081 (5th Cir. 1990); *Meza v. General Battery Corp.,* 908 F.2d 1262, 1279 (5th Cir.1990); *Denton v. First National Bank of Waco, Texas,* 765 F.2d 1295, 1301 (5th Cir.1985). "The exhaustion of administrative remedies doctrine requires not that only administrative remedies selected by the complainant be first exhausted, but instead that all those prescribed administrative remedies which might provide appropriate relief be pursued prior to seeking relief in the federal courts." The requirement for mandatory appeals in ERISA cases is contained in 29 C.F.R. § 2560.503–1.

Section 2560.503–1(g) provides that every plan must have a procedure for appealing a denied claim. The regulation requires that the appeals procedure permit the claimant to "(i) request a review upon written application to the plan; (ii) review pertinent documents; and (iii) submit issues and comments in writing." The time period for filing an administrative appeal is found at 29 C.F.R. § 2560.503–1(g)(3), which states that "A plan may establish a limited period within which a claimant must file any request for review of a denied claim. Such time limits must be reasonable and related to the nature of the benefit which is the subject of the claim and to other attendant circumstances. In no event may such a period expire less than 60 days after receipt by the claimant of written notification of denial of a claim."

There are, however, some exceptions to the exhaustion-of-administrative-remedies requirement. In *Hessbrook v. Lennon,* 777 F.2d 999, 1003 (5th Cir.1985), the Court stated that "[e]xceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would be a patently futile course of action."

Because this court has determined that the plan at issue here is an "employee welfare benefits plan," governed by ERISA, it follows then that plaintiff had a duty to exhaust her administrative remedies. Plaintiff's duty to exhaust her administrative remedies placed upon her an obligation to appeal Ethyl's denial of benefits. In the instant case, plaintiff was fully aware of her right, as well as the time period required, to request a review of the denial of benefits in writing. Plaintiff also was given the opportunity to review pertinent documents. In spite of that, plaintiff turned to this court before submitting in writing her opposition to the denial of benefits to the review committee. There is no evidence in this case that the defendant ever attempted to shield any information regarding plaintiff's rights under the plan, such that plaintiff would be justified in her belief that the review committee was predisposed to reject her claim. Plaintiff's

subjective belief that her claim would be rejected by the review committee is insufficient in and of itself to trigger an exception to the exhaustion-of-administrative-remedies requirement. Were plaintiff to succeed on such an argument, any plaintiff who asserted a claim of futility against a plan's review committee would not be compelled to submit a claim for administrative review of the denial of benefits prior to filing of a federal lawsuit. *See Denton,* 765 F.2d at 1303. Such a notion is in direct conflict with Congress' intent in enacting ERISA to require that plaintiffs exhaust their administrative remedies before resorting to federal court. Consequently, this court is persuaded that plaintiff in this matter is required to exhaust her administrative remedies before attacking any administrative decisions in this court.

Accordingly, since this court is convinced that the plan here is an "employee welfare benefits plan" under ERISA, and since plaintiff did not exhaust her administrative remedies, this court must dismiss plaintiff's ERISA claim until such time as plaintiff has complied with the exhaustion-of-administrative-remedies requirement. Further, in consonance with ERISA's preemption doctrine, plaintiff's state law claims under Mississippi law of breach of contract and bad faith refusal to pay are hereby dismissed.

**SO ORDERED AND ADJUDGED.**