Jimmy Wallace McNEIL, Individually, and as Independent Executor and Representative of the Estate of Michael Jay McNeil, Plaintiffs,

v.

**TIME INSURANCE COMPANY,**
Defendant.

Civil Action No. 3:95–CV–0382–G.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 10, 1997.

Cynthia Anne Leiferman, Dallas, TX, for Plaintiffs.

Andrew George Jubinsky, Timothy Alan Daniels, Figari & Davenport, Dallas, TX, for Defendant.

## MEMORANDUM OF DECISION

FISH, District Judge.

On June 24, 1997, a nonjury trial was held in this cause to decide the question whether the plaintiffs' state law claims are preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Concluding that ERISA does preempt these claims, the court herein delivers its findings of fact and conclusions of law. Any finding of fact below may be deemed a conclusion of law, and any conclusion may be deemed a finding of fact.

---

1. McNeil died on March 1, 1995. Since that time, Jimmy Wallace McNeil, individually and as

## I. *FINDINGS OF FACT*

On November 14, 1992, the plaintiff, Michael Jay McNeil ("McNeil")[1], who was a member of the Texas Optometric Association ("TOA"), applied for health coverage from National American Life Insurance Company of Pennsylvania ("NALICO") as a sole proprietor/independent contractor. Trial Transcript ("TR") at 11, 17; Defendant's Exhibit ("DX") 24. The application for NALICO coverage indicated that NALICO's insurance was provided in accordance with ERISA. DX 24. Frank Kyle ("Kyle") was the insurance agent who assisted TOA members in obtaining coverage from NALICO. TR at 8–10.

On July 30, 1993, McNeil and Roy F. Dickey ("Dickey") formed a partnership known as "Drs. Dickey and McNeil, Optometrists" ("the Partnership"). TR at 86; DX 16 at 1, 12. The Partnership engaged in the business of selling eyeglasses which it purchased from suppliers all over the United States. TR at 88. In October of 1993, the Partnership hired Jana Jay ("Jay") as a full-time employee. *Id.* at 87–88.

In April of 1994, Kyle recommended that TOA members switch their coverage from NALICO to Time Insurance Company ("Time"). *Id.* at 18–19. Kyle sent to all TOA members, including McNeil, a summary of Time's benefits, the materials they needed to enroll, and a proposal ("the proposal") setting forth the cost of Time's insurance. *Id.* at 20, 22; DX 5. These materials were sent to McNeil and not to the Partnership, TR at 22, 51; DX 11, and the proposal did not mention ERISA. TR at 51; DX 11. After receiving these materials, McNeil telephoned Kyle to inform him that he had formed a partnership and wanted to add at least one employee to his coverage. TR at 24–25, 89–90, 100; DX 2. McNeil and Kyle discussed the coverage available for Jay, and McNeil declined maternity coverage for her. TR at 25. Kyle explained to McNeil that he was required to pay seventy-five percent of the premium for his employees. *Id.* Following his conversation with McNeil, Kyle sent a second proposal which stated that McNeil

independent executor of McNeil's estate, has prosecuted this action.

and Jay would be covered by Time and their combined premium would be $237.66 per month. TR at 26–27; DX 12. According to Kyle, these materials did not constitute an ERISA plan. TR at 66, 70–71. Kyle did not market Time's insurance policy as an ERISA plan. *Id.* at 58–59.

Time's insurance policy was offered to TOA members through a Multiple Employer Trust ("Time MET"). Joint Pretrial Order at 3 [2]; TR at 55–56. The Employer Participation Agreement/Application ("employer application") provided that the "employer adopts the Trust Agreement and agrees to be bound by all the terms and conditions of it and any amendments to it." DX 9 at 2. Kyle did not provide a copy of the Trust Agreement to McNeil or to the Partnership. TR at 56.

There are eighty-five groups with a total of approximately four-hundred individual members in the Time MET. TR at 72–73; Plaintiffs' Exhibits ("PX") 32–34. An individual member of the TOA with no employees could be covered under the Time MET. Joint Pretrial Order at 3; TR at 50. Such individual members would be known as "one life optometrist groups." Joint Pretrial Order at 3. Time agreed to insure these one-life groups in order to secure the patronage of the TOA. TR at 50–51; PX 35. Under Time's group policy, an "employer" can also be an "employee," and it was common for solo optometrists to use both terms to describe themselves when applying for coverage. TR at 47–48, 76. As an "employer," a solo optometrist wishing to obtain coverage from Time completed the employer application in order to subscribe to the MET. *Id.* at 61–62; DX 9. As an "employee," a solo optometrist completed the Group Insurance Employee Enrollment Form ("enrollment form"). *Id.* at 62–63; DX 10.

On April 27, 1994, McNeil, on behalf of the Partnership, submitted to Time an employer application, which indicated that the Partnership had three full-time employees but that only two sought medical insurance coverage. DX 9 at 1. By signing the employer applica-

tion, McNeil agreed that he had the "authority to represent and bind the employer." *Id.* at 2. Kyle completed the portions of the employer application which selected medical coverage and the amount of annual and inpatient deductibles for that coverage. TR at 32. Shortly after McNeil submitted the employer application, he, Dickey and Jay each submitted enrollment forms. *Id.* at 29–30; DX 10, 13, 20. McNeil's enrollment form listed him as an "employee," described his job duties as "[p]artner in [b]usiness—[o]ptometrist," DX 10 at 1, and did not indicate that he agreed to establish or maintain an ERISA plan. TR at 64–65.

Upon accepting the Partnership's employer application and the enrollment forms from McNeil, Jay and Dickey, Time sent two documents to the Partnership—certificate booklets for McNeil and Jay and an administrative kit ("the kit"). DX 17, 19; TR at 39–42, 152–53.[3] Time provided the kit "[t]o explain to the group how to administrate their group, how to file claims, various numbers to the insurance companies, all the things that we would ordinarily need to do in the course of a business to administrate their claim." TR at 42. The Partnership's administrative activity consisted of receiving premium notices, paying premiums, and, when Jay's employment ended, returning to Time her premium notice with a request to cancel her coverage. TR at 100–01, 141. Although the kit sent to the Partnership described the administrative duties it was to perform, Time did not know whether the Partnership performed any of these duties. *Id.* at 156–57. Time investigated claims made pursuant to its insurance policy, determined eligibility for payment, notified the insured if coverage was to be cancelled, determined premium amounts, and decided whether the group policy's terms should be changed. *Id.* at 79–80. Time provided a telephone number for insureds to use if they had "any questions regarding [their] medical plan coverage. . . ." PX 7. Time did not inform the Partnership that it had to administer an ERISA plan or other plan of

---

**2.** Citations to the joint pretrial order refer to those facts stipulated by the parties as undisputed.

**3.** Dickey declined coverage from Time. TR at 106; DX 13.

insurance. TR at 120. Kyle believed Time to be the administrator of its group insurance policy. *Id.* at 81. The certificate booklets issued to McNeil and Jay stated that, "[a]s a participant under Your employer's plan, this certificate is being furnished in compliance with ... [ERISA]. Your employer is the plan administrator of this plan." DX 17.

On May 11, 1994, the Partnership paid the first premium to Time for McNeil and Jay from its operating account. TR at 99–100, 105, 130; DX 14. McNeil reimbursed the Partnership for his portion of this premium payment. TR at 133. Thereafter, in June, July, August, October, and November of 1994, the premium for Jay's insurance was paid separately from the premium for McNeil's insurance and was paid from the Partnership's account. DX 15; TR at 130–32. The premiums for McNeil and Jay were paid jointly in September of 1994, but McNeil later reimbursed the Partnership for his portion. DX 15 at 2; TR at 131. McNeil's funds, and not the Partnership's, were used to pay his premiums. TR at 133, 180.

McNeil did not intend to create, and did not understand himself to be the administrator of, an ERISA plan. TR at 178, 183. The Partnership did not intend to create a plan of insurance or an ERISA plan, nor did it draft a document called an ERISA plan. *Id.* at 116–18. The Partnership did not take any tax deductions for the costs of establishing or administrating an ERISA or other insurance plan, did not prepare or file any summary reports or financial reports for an ERISA plan, did not possess a summary plan description, and did not file any forms or reports regarding an ERISA plan with the Internal Revenue Service ("IRS") or the United States Department of Labor ("DOL"). *Id.* at 112, 115–16, 126, 197–98, 201.

The Partnership dissolved on or about September 1, 1994. *Id.* at 127. Dickey paid Jay's premiums from November of 1994 to February of 1995, when Jay ceased to work for the Partnership. *Id.* at 135. In late 1994, after McNeil was admitted to the emergency room for treatment, Reviewtime, "the utilization review program of Time Insurance Company," sent him a notice which advised him to "direct questions regarding plan terms and limitations to Time Insurance Company Member Services Department." PX 23 at 2.

## II. CONCLUSIONS OF LAW

An ERISA plan is any employee welfare benefit plan that is "established or maintained by an employer" engaged in interstate commerce[4] which "provid[es] for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment...." 29 U.S.C. §§ 1002(1), 1003(a)(1); see also *Gahn v. Allstate Life Insurance Company*, 926 F.2d 1449, 1451 (5th Cir.1991).

The Fifth Circuit has

devised a comprehensive test for determining whether a particular plan qualifies as an 'employee welfare benefit plan'; we ask whether a plan: (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA 'employee benefit plan'—establishment or maintenance by an employer intending to benefit employees. If any part of the inquiry is answered in the negative, the submission is not an ERISA plan.

*Meredith v. Time Insurance Company*, 980 F.2d 352, 355 (5th Cir.1993).

In this case, it is undisputed that a multiple employer trust exists and that the Time MET is not an ERISA plan. Joint Pretrial Order at 3. However, the relationship between Time and the Time MET is "only marginally relevant" to determining whether an ERISA plan exists. *Gahn*, 926 F.2d at 1452. The proper focus of the court's

---

4. The court is satisfied, based upon the evidence adduced at trial, that the Partnership was "engaged in ... commerce" and "in an[] ... activity affecting commerce...." 29 U.S.C. § 1003(a)(1). The only case cited by the plaintiffs for the contrary proposition, *Sheffield v. Allstate Life Insurance Company*, 756 F.Supp. 309 (S.D.Tex.1991), *see* Plaintiffs' Closing Arguments and Trial Brief on ERISA at 35–36, is inapposite.

inquiry is "the employer ..., and [its] involvement with the administration of the plan." *Gahn,* 926 F.2d at 1452 (citing *Memorial Hospital System v. Northbrook Life Insurance Company,* 904 F.2d 236, 243 (5th Cir.1990), and *Taggart Corporation v. Life and Health Benefits Administration, Inc.,* 617 F.2d 1208, 1211 (5th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981)). "The burden is on the [d]efendant ... to establish the existence of a plan or program which would invoke ERISA's exclusive remedy provisions, since it is the one asserting ERISA preemption." *Cooley v. Protective Life Insurance Company,* 815 F.Supp. 189, 194 (S.D.Miss.1993) (citing *Kanne v. Connecticut General Life Insurance Company,* 859 F.2d 96, 99 n. 4 (9th Cir.1988), and *Murphy v. Inexco Oil Company,* 611 F.2d 570, 574 (5th Cir.1980)).

### A. Does A Plan Exist?

■ The initial inquiry as to whether there is a plan is governed by the test first articulated by the Eleventh Circuit in *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982) (en banc), and adopted by this circuit in *Memorial Hospital,* 904 F.2d at 240–241. The Eleventh Circuit's test is as follows:

> In determining whether a plan, fund or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.

*Donovan,* 688 F.2d at 1373. "A formal document designated as 'the Plan' is not required to establish that an ERISA plan exists." *Memorial Hospital,* 904 F.2d at 241. In addition, the purchase of an insurance policy does not, in and of itself, establish that a plan exists, " 'but the purchase is evidence of the establishment of a plan, fund, or program....' " *Id.* at 242 (quoting *Donovan,* 688 F.2d at 1373).

■ The court is of the opinion that a plan ("the plan") does exist in the instant case. A reasonable person could easily ascertain that the intended benefit of the plan purchased by the Partnership was medical insurance; that

the beneficiaries were employees of the Partnership, *viz.,* McNeil and Jay; that the source of the financing was premiums paid by McNeil and the Partnership, and that the procedure for receiving benefits was to make a claim with Time through forms provided by it.

### B. Is the Plan Excluded?

■ This part of the court's analysis focuses on whether the plan is exempt from ERISA because it falls within the safe-harbor provision promulgated by the DOL. 29 C.F.R. § 2510.3–1(j)(1)–(4); see also *Gahn,* 926 F.2d at 1452; *Memorial Hospital,* 904 F.2d at 241 n. 6. Under this provision, the insurance policy at issue is not an employee welfare benefit plan covered by ERISA if (1) the Partnership did not contribute to the policy; (2) participation was voluntary; (3) the Partnership's involvement with the policy was limited to collecting premiums and remitting them to Time and to permitting Time to advertise its policy; (4) the Partnership received no profit from administering the policy. *Gahn,* 926 F.2d at 1452; *Memorial Hospital,* 904 F.2d at 241 n. 6. "The plan must meet all four criteria to be exempt." *Meredith,* 980 F.2d at 355.

■ In the instant case, the evidence clearly shows that the Partnership paid for Jay's premium and thus did contribute to the plan. In addition, the evidence also shows that the Partnership was expected to be involved in the administration of the plan. See *McDonald v. Provident Indemnity Life Insurance Company,* 60 F.3d 234, 236 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996); *Sparks v. Life Investors Insurance Company of America,* 818 F.Supp. 945, 947–48 (N.D.Miss.1993). Accordingly, the plan falls outside the safe-harbor provision and is therefore not exempt from ERISA coverage.

### C. Is the Plan an ERISA Plan?

■ The court now turns to the third step of its analysis to determine "whether the assumed plan falls within the broad parameters of ERISA." *Meredith,* 980 F.2d at 355. In making this determination, the court

"look[s] to the two 'primary elements of an ERISA "employee welfare benefit plan" as defined by the statute: (1) whether an employer established · or maintained the plan; and (2) whether the employer intended to provide benefits to its employees.' " *Id.* (quoting *MDPhysicians & Associates, Inc. v. State Board of Insurance,* 957 F.2d 178, 183 (5th Cir.), *cert. denied,* 506 U.S. 861, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992), and *Hansen v. Continental Insurance Company,* 940 F.2d 971, 977 (5th Cir.1991)).

### 1. Establish or Maintain

■ To determine whether an employer established or maintained an employee welfare benefit plan, the court must focus on the employer and its involvement with the plan. *Gahn,* 926 F.2d at 1452. Although an employer's purchase of insurance does offer " 'substantial evidence' " that a plan has been established, *Memorial Hospital,* 904 F.2d at 242 (quoting *Donovan,* 688 F.2d at 1373), "if an employer does no more than purchase insurance for [its] employees, and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, [it] has not established an ERISA plan." *Hansen,* 940 F.2d at 978 (citations omitted).

■ The court is of the opinion that McNeil's purchase of insurance from Time was not a "bare purchase" of insurance so as to be beyond ERISA's purview. *Taggart,* 617 F.2d at 1211. The evidence developed during trial demonstrates that McNeil discussed the terms of Time's coverage with Kyle, was responsible for obtaining the plan from Time and for paying the premiums, and provided information as to the desired benefits and the employees to be covered. The evidence also shows that McNeil was sent the kit, which explained the duties he as the employer was to perform in administering the plan. Even if Time was primarily responsible for administering the plan, a fact for which there is some support in the record, "the fact that [the Partnership's] administrative functions under the policy are minimal is perfectly in keeping with its intent that [Time] administer the plan as well as insure it." *Memorial Hospital,* 904 F.2d at

243; see *Kidder v. H & B Marine, Inc.,* 932 F.2d 347, 352–53 (5th Cir.1991) (relying on *Memorial Hospital* to conclude that an ERISA plan existed where employer contributed a portion of its employees' premiums but did not actively maintain or administer the insurance , program). In addition, "[w]hether, in fact, [McNeil] ever performed any of the tasks outlined in the administration kit is irrelevant . . . ; by signing up to be a part of the trust, he was obligated to do more than simply collect and remit premiums." *Sparks,* 818 F.Supp. at 948. In short, McNeil established and maintained an employee welfare benefit plan. See *McDonald,* 60 F.3d at 236; *Hansen,* 940 F.2d at 978; *Memorial Hospital,* 904 F.2d at 242–43.

### 2. Intent to Benefit

■ "In addition to some meaningful degree of participation by the employer in the creation or administration of the plan, [ERISA] requires that the employer have had a purpose to provide health insurance, accident insurance, or other specified types of benefits to its employees." *Hansen,* 940 F.2d at 978 (citing 29 U.S.C. § 1002(1)). The court· must find that the employer had an "intent to provide its employees with a welfare benefit program through the purchase and maintenance of a group insurance policy." *Memorial Hospital,* 904 F.2d at 241.

■ The court concludes that there was ample evidence presented at trial of McNeil's intent to provide health insurance for himself and for Jay. Specifically, Dickey and McNeil both decided to obtain health insurance for Jay and to pay the cost of such insurance, and McNeil notified Kyle that he had hired Jay and wished to provide such insurance for her. Further evidence of the Partnership's intent to benefit Jay is McNeil's discussion with Kyle about the cost of maternity coverage. Under controlling Fifth Circuit authority, that McNeil did not understand himself to be establishing an ERISA plan is of no moment; it is sufficient that he desired to provide a plan of health insurance for himself and his employee. *Meredith,* 980 F.2d at 354 ("We are not here concerned with whether the 'entity that established and maintained the plan intended ERISA to govern . . . .'

For our guidon we note that 'ERISA protection and coverage turns on whether the [plan] satisfies the statutory definition.' ") (citing *MDPhysicians,* 957 F.2d at 183 n. 7); see also *Kidder,* 932 F.2d at 353 (finding that an ERISA plan exists because, "as in *Memorial Hospital* and unlike in *Taggart,* this case does not involve a company composed of a single employee who is essentially purchasing insurance for *himself* while attempting to characterize his insurance as a group health plan") (emphasis added).

In sum, the court is of the opinion that Time presented sufficient evidence of "an employer-employee-plan relationship" in the instant case, *Memorial Hospital,* 904 F.2d at 243, and thus discharged its burden of demonstrating the "existence of a plan or program which would invoke ERISA's exclusive remedy provisions." *Cooley,* 815 F.Supp. at 194.

### D. *ERISA Preemption*

"It is well settled in the Fifth Circuit that 'state law claims, regardless of how they are pleaded, are preempted if they "relate to" an ERISA plan.' " *Davis v. AIG Life Insurance,* 945 F.Supp. 961, 967 (S.D.Miss.1995) (quoting *Epps v. NCNB Texas,* 7 F.3d 44, 45 (5th Cir.1993), and citing *Hubbard v. Blue Cross and Blue Shield Association,* 42 F.3d 942, 945 (5th Cir.), *cert. denied,* 515 U.S. 1122, 115 S.Ct. 2276, 132 L.Ed.2d 280 (1995); *Rozzell v. Security Services, Inc.,* 38 F.3d 819, 821 (5th Cir.1994), and *Iron Workers Mid–South Pension Fund v. Terotechnology,* 891 F.2d 548, 552 (5th Cir.), *cert. denied,* 497 U.S. 1024, 110 S.Ct. 3272, 111 L.Ed.2d 782 (1990)), *aff'd,* 85 F.3d 624 (5th Cir.1996) (table). The Supreme Court "has interpreted ERISA's general preemption provision liberally: '[a] law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " *Memorial Hospital,* 904 F.2d at 244 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)).

■ The court concludes that the plaintiffs' state law claims—the gravamen of which is Time's failure to provide McNeil the maximum lifetime benefit set forth in his policy—address an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan, and directly affect the relationship between McNeil, the Partnership, and Time. *Smith v. Texas Children's Hospital,* 84 F.3d 152, 154 (5th Cir.1996). Accordingly, the plaintiffs' state law claims are preempted by ERISA. See *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 43, 47–48, 107 S.Ct. 1549, 1550, 1552–53, 95 L.Ed.2d 39 (1987); *Hogan v. Kraft Foods,* 969 F.2d 142, 144–45 (5th Cir.1992); *Lee v. E.I. DuPont de Nemours and Company,* 894 F.2d 755, 756, 758 (5th Cir.1990); *Ramirez v. Inter–Continental Hotels,* 890 F.2d 760, 763–64 (5th Cir.1989); *Boren v. N.L. Industries, Inc.,* 889 F.2d 1463, 1464–65 (5th Cir.1989), *cert. denied,* 497 U.S. 1029, 110 S.Ct. 3283, 111 L.Ed.2d 792 (1990); *Hermann Hospital v. MEBA Medical & Benefits Plan,* 845 F.2d 1286, 1290–91 (5th Cir.1988). In addition, none of the plaintiffs' state law claims falls under ERISA's savings clause, which exempts from preemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A); see *Pilot Life,* 481 U.S. at 50–52, 107 S.Ct. at 1554–56; *Hogan,* 969 F.2d at 145 (citing *McManus v. Travelers Health Network of Texas,* 742 F.Supp. 377, 379–82 (W.D.Tex.1990)); *Ramirez,* 890 F.2d at 763–64.

### III. *CONCLUSION*

Based on the findings of fact and conclusions of law set forth above, the court concludes that the insurance policy at issue in the instant case is governed by ERISA. The court also concludes that, because all of the plaintiffs' state law claims relate to that policy, these claims are preempted by ERISA.